**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case Number:  13-CV-60154  COHN/SELTZER**

|  |  |
|---|---|
| IT'S A 10, INC., a Florida Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BEAUTY ELITE GROUP, INC., a Texas corporation; and BASIM SHAMI, an individual, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF
LAW IN SUPPORT THEREOF; REQUEST FOR ORAL ARGUMENT**

## TABLE OF CONTENTS

**Page No.**

INTRODUCTION ……………………………………………………………………...1

II.  SUMMARY OF MATERIAL FACTS …………………………………………….....2

    A.  Plaintiff's Trademark and Trade Dress ……………………………………………...2

    B.  Defendants' Infringing Acts………………………………………………….......5

III.  ARGUMENT…………………………………………………………………………...8

   1.  PLAINTIFF IF HIGHLY LIKELY TO SUCCEED ON THE
MERITS OF ITS CLAIMS…………………….…………….……………….…………9

    A.  Plaintiff Will Prevail on Its Trademark Infringement and Unfair Competition
Claims Under the Lanham Act and Under Florida Statutes and Common Law……..9

      (1) Plaintiff  Had Prior Rights to Its Trademark and Trade Dress ….……………10

      (2) The Factors Indicate a Likelihood of Confusion ……......................................11

           i.  Plaintiff's It's a 10 Trademarks are Inherently Distinctive................11

          ii.  Defendants' Trademark is Virtually Identical to
              Plaintiff's Trademark ........................................................................12

          iii.  The Respective Goods are Identical…………………………………...13

          iv.  The Parties' Customers and Retailers are Identical…………………13

           v.  The Parties' Advertising Media are Similar.......................................14

          vi.  The Intent of Defendants....................................................................14

         vii.  Evidence of Actual Confusion...........................................................16

    B.  Plaintiff Will Prevail on Its Federal Trade Dress Infringement Claim…………....16

    C.  Plaintiff Will Prevail on its Federal Trademark Dilution Claim……….………...18

    D.  Plaintiff Will Prevail on its Unfair Competition Claim Under Florida State Law….19

    E.  Defendants Engaged in False Advertising………..………………..………………...20

i

2. PLAINTIFF WILL BE IRREPARABLY HARMED UNLESS DEFENDANTS' UNLAWFUL CONDUCT IS ENJOINED.………..…………….…………….…….20

3. THE THREATENED INJURY TO PLAINTIFF OUTWEIGHS ANY THREATENED HARM AN INJUNCTION MAY DO TO DEFENDANT………….…..…..……..21

4. THE PUBLIC INTEREST WILL BE SERVED BY THE ISSUANCE OF A PRELIMINARY INJUNCTION………….…..…..………………………….…..23

5. CONCLUSION…………..…..…………………………….………………24

# TABLE OF AUTHORITIES

Page(s)

*All Care Nursing Serv., Inc. v. Bethesda Mem. Hosp., Inc., 887 F.2d 1535*
   *(11th Cir. 1989)* ................................................................................................8

*Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200*
   *(11th Cir. Ga. 2008)*.........................................................................................23

*Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th Cir. 1994) .............14

*BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc., 785 (M.D. Fla. 1991)*.............23

*Brookfield Communs. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. Cal. 1999) .........14

*Burger King Corp. v. Agad*, 911 F. Supp. 1499 (S.D. Fla. 1995)..........................................8

*Chanel, Inc. v. Chanel255.org, 2012 U.S. Dist. LEXIS 73894*
   *(S.D. Fla. May 29, 2012)* ..................................................................................23

*Chanel, Inc. v. Mesadieu,*
   2009 U.S. Dist. LEXIS 70669 (M.D. Fla. July 23, 2009)................................................21

*Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313 (11th Cir. 2011) ....................19

*Dippin' Dots, Inc. v. Frosty Bites Distribution,*
   *LLC*, 369 F.3d 1197 (11th Cir. 2004) .....................................................................17

*Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330 (11th Cir. Fla. 1999)..........11, 14

*E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*,
   756 F.2d 1525 (11th Cir. Fla. 1985) ...................................................................9, 16, 21

*E.R. Squibb & Sons, Inc. v. Princeton Pharmaceutical, Inc.*,
   17 U.S.P.Q.2d (BNA) 1447 (S.D. Fla. Sept. 4, 1990) ..............................................11, 14

*Gaffigan v. Doe*, 689 F. Supp. 2d 1332 (S.D. Fla. 2009)......................................................21

*GMC v. Phat Cat Carts, Inc.*, 504 F. Supp. 2d 1278 (M.D. Fla. 2006)................................16

*James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266 (7th Cir. 1976) ...................23

*John H. Harland Co. v. Clarke Checks, Inc.*,
   711 F.2d 966 (11th Cir. 1983) ...................................................................11, 13, 14, 16

iii

*Lone Star Steakhouse & Saloon v. Longhorn Steaks*,
106 F.3d 355, 1997 U.S. App. LEXIS 3276 (11th Cir. Ga. 1997) ..................................10

*McDonald's Corp. v. Robertson*, 147 F.3d 1301 (11th Cir. Fla. 1998) ..............................8, 9, 20

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008) ..................20

*Nike, Inc. v. Leslie, 1985 U.S. Dist. LEXIS 16694 (M.D. Fla. June 21, 1985)*....................23

*Northwestern Bell Telephone Co. v. Bedco of Minnesota, Inc.*,
501 F. Supp. 299 (D. Minn. 1980) ..................................................................................22

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*,
684 F.2d 821 (11th Cir. Ga. 1982) ..................................................................................15

*Park 'N Fly Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985) ........................................23

*Power Test Petroleum Distributors v. Calcu Gas*,
754 F.2d 91 (2d Cir. 1985)...............................................................................................20

*Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258 (N.D. Fla. 2009) ......................................9

*Ross Bicycles, Inc. v. Cycles USA, Inc.*,
765 F.2d 1502 (11th Cir. Fla. 1985) ................................................................................12

*Sec. & Exchange Comn v. World Radio Mission, Inc.*,
544 F.2d 535 (1st Cir. 1976)............................................................................................22

*SunAmerica Corp. v. Sun Life Assurance Co. of Can.*,
77 F.3d 1325 (11th Cir. Ga. 1996)..................................................................................14

*Suntree Techs., Inc. v. Ecosense Int'l, Inc.*,
693 F.3d 1338 (11th Cir. Fla. 2012) ................................................................................19

*Suzuki Motor Corp. v. Jiujiang Hison Motor Boat Mfg. Co.*,
2012 U.S. Dist. LEXIS 20366 (S.D. Fla. 2012)............................................................8, 13

*Teledyne Industries, Inc. v. Windmere Products, Inc.*,
*433 F. Supp. 710 (S.D. Fla. 1977)* .................................................................................22

iv

*Tiffany (NJ), LLC v. Liu Zheng*,
2011 U.S. Dist. LEXIS 155250 (S.D. Fla. Feb. 1, 2011)................................................22

*Tiramisu Int'l LLC v. Clever Imps*. LLC,
741 F. Supp. 2d 1279 (S.D. Fla. 2010) ......................................................................21, 22

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992)................................................11

*United States v. Torkington*, 812 F.2d 1347 (11th Cir. 1987) ................................................23

## FEDERAL STATUTES

15 U.S.C. 1114(1)..........................................................................................................9

15 U.S.C. § 1125(c)(1). ...............................................................................................19

15 U.S.C. § 1125(a) .....................................................................................................20

## FLORIDA STATE STATUTES

§ 495.151.......................................................................................................................9

§ 501.204.......................................................................................................................9

## OTHER AUTHORITIES

*2J  McCarthy, Trademarks and Unfair Competition* (2nd Ed. 1984)………………………......15

# I.  INTRODUCTION

Plaintiff moves for a preliminary injunction to prevent Defendants from further infringing Plaintiff's valuable trademark rights – the justification will be readily evident upon review of the facts set forth herein and upon even a cursory review of the products at issue herein.

As discussed in detail below, Plaintiff is the owner of the highly successful **It's a 10 Miracle** hair care product line.  This line includes Plaintiff's federally registered **It's a 10** trademark, the federally registered **Miracle Leave-In Products** trademark, as well as Plaintiff's distinctive trade dress. The success of Plaintiff's **It's a 10 Miracle** hair care line is based upon the creative labors and financial investment of Plaintiff's CEO, Carolyn Plummer, whose Declaration attached to this Motion for Preliminary Injunction demonstrates the considerable efforts, resources and finances expended on the promotion, marketing and sale of the **It's a 10 Miracle** hair care line.  Plaintiff's efforts have resulted in global recognition and fame of the **It's a 10 Miracle** hair care line.

Long after Plaintiff began use of its **It's a 10 Miracle** trademarks and trade dress, Defendants began using a virtually identical trademark and trade dress for its hair care product. Defendants intentionally and willfully infringed and usurped the goodwill and recognition associated with Plaintiff's trademarks and trade dress. As a result, Plaintiff has filed a complaint against Defendants for trademark infringement, dilution, false advertising and unfair competition under federal and state law ("Complaint") simultaneously with this Motion for a Preliminary Injunction.

## II.  SUMMARY OF MATERIAL FACTS

### A.  Plaintiff's Trademarks and Trade Dress

Plaintiff It's a 10, Inc. is a nationally and internationally recognized leader in the innovation and sale of personal hair care products. Plaintiff is the owner of the famous **It's a 10 Miracle** hair care line, which includes, but is not limited to, shampoos, conditioners and leave-in treatments (hereinafter "**It's a 10 Miracle Products**"). Plaintiff markets, promotes, and sells its unique and distinctive hair care products under its famous and distinctive **IT'S A 10** trademark, and under various MIRACLE-formative marks, including **MIRACLE LEAVE IN PRODUCTS** (collectively "**It's a 10 Trademarks**").

Plaintiff has invested considerable efforts, resources and financial expenditures promoting, marketing and selling its hair care products under the **It's a 10 Trademarks**. Plaintiff has significant common law interests and rights in and to the terms IT'S A 10, MIRACLE and MIRACLE LEAVE IN for hair care products and has continually and substantially used the **It's a 10 Trademarks** in interstate commerce for hair care products since at least as early as 2006.

Plaintiff owns the following U.S. Federal Trademark Registrations:

| Mark | Reg. No. | Description of Goods |
|------|----------|----------------------|
| **IT'S A 10** | 3,420,182 | IC 003.  A full line of hair care products, namely, shampoos, and conditioners styling gels, hair lotions and hair sprays. |
| **MIRACLE LEAVE IN PRODUCTS** | 3,446,682 | IC 003. A full line of hair care products, namely, shampoos, conditioners, styling gels, hair lotions and hair sprays. |

| **MIRACLE LEAVE IN PLUS KERATIN** | 4,082,539 | IC 003. Hair care products, namely, styling, nourishing and protective sprays. |
|---|---|---|
| **MIRACLE SHAMPOO PLUS KERATIN** | 4,210,868 | IC 003. Hair care products, namely, shampoos. |
| **MIRACLE OIL PLUS KERATIN** | 4,210,866 | IC 003. Hair care products, namely, oil preparation for hair. |
| **MIRACLE VOLUME SHAMPOO** | 4,210,867 | IC 003. Hair care products, namely, shampoos. |
| **MIRACLE FINISHING SPRAY** | 4,210,865 | IC 003. Hair care products, namely, styling sprays. |
| **MIRACLE STYLING CREAM** | 4,210,796 | IC 003. Hair care styling aids, namely, hair creams. |
| **MIRACLE STYLING SERUM** | 4,006,825 | IC 003. Hair care products, namely, styling gels. |
| **MIRACLE MOISTURE SHAMPOO** | 3,761,012 | IC 003. Hair care products, namely, shampoos. |
| **MIRACLE SHINE SPRAY** | 3,760,956 | IC 003. Hair care products, namely, hair sprays. |
| **MIRACLE HAIR MASK** | 3,760,933 | IC 003. Hair care products, namely, a hair conditioner and strengthener. |
| **MIRACLE FIRM HOLD GEL** | 4,210,234 | IC 003.Hair care styling aids, namely, hair gels. |
| **MIRACLE DAILY CONDITIONER** | 3,974,756 | IC 003. Conditioners. |

3

Plaintiff's trademark registrations constitute constructive use of its marks throughout the United States and constructive notice to third parties of Plaintiff's rights in the **It's a 10 Trademarks.** (A copy of the registrations for the It's a 10 Trademarks is attached to the Complaint as **Exhibit A**).

Plaintiff also owns numerous U.S. Federal Trademark Applications for MIRACLE and MIRACLE LEAVE IN formative marks, including but not limited to **MIRACLE LEAVE-IN FOR BLONDES** (Ser. No. 85/630,289), **MIRACLE LEAVE IN LITE** (85/243/510); **MIRACLE CONDITIONER PLUS KERATIN** (Ser. No. 85/243,471); **MIRACLE LEAVE IN POTION PLUS KERATIN** (Ser. No. 85/630,284); **MIRACLE DRY SHAMPOO AND CONDITIONER IN ONE** (Ser. No. 85/643.946), **MIRACLE TEXTURE FIBER** (Ser. No. 76/703,187) **MIRACLE VOLUME SHINE TREATMENT** (Ser. No. 85/643,953) and **MIRACLE BEAUTY BALM** (Ser. No. 85/797,721) – to name only a few.

Plaintiff's top-selling product in its vast portfolio of MIRACLE Products is its **It's a 10 Miracle Leave-In Products** at issue herein**.** A depiction of Plaintiff's **It's a 10 Miracle Leave-In Products** is attached as **Exhibit B** to the Complaint**.**  Plaintiff sells its **It's a 10 Miracle Products** under its non-functional trade dress, including its distinctive and famous **It's a 10 Miracle Leave-In Products** trade dress, which includes, among other non-functional elements, a distinctive magenta and blue color scheme and a white, all lower case, san serif font coupled with a distinctive arrangement that includes the number "10" at the top of the bottle inside a white circle that is outlined in magenta (hereinafter "**Trade Dress**"). (A depiction of Plaintiff's **Trade Dress** is attached as **Exhibit B** to the Complaint).  Consumers immediately identify Plaintiff's **Trade Dress** with Plaintiff and Plaintiff's quality hair products.

Plaintiff has spent over $15 million to date on the advertising and promotion of the **It's a 10 Trademarks** and **Trade Dress**, and has invested an immeasurable amount of time and effort in the development of their unique brand and product line. As a result of Plaintiff's considerable promotional efforts, it has achieved huge commercial success both in the United States and abroad in connection with its **It's a 10 Miracle Products**, which have received wide spread fame and recognition by consumers in the beauty and hair care market.

Plaintiff's **It's a 10 Miracle Products** have generated substantial attention and praise in various publications in the relevant industry, including unsolicited promotion in several top, well-known publications, including but not limited to, *Cosmopolitan*, *Martha Stewart Wedding Magazine*, *People Magazine*, *US Magazine*, *In Style, Good Housekeeping, Star Magazine, Ladies' Home Journal, Redbook, Town & Style, Fitness Magazine, Lucky Magazine* and *Seventeen.. See* examples of relevant publications attached to the Complaint as **Exhibit C**. The **It's a 10 Miracle Products** are sold in countless professional hair salons worldwide and in major retail stores.

The **It's a 10 Trademarks** and **Trade Dress** have significance in the minds of distributors, the members of the trade and with relevant consumers as denoting services coming from, affiliated with or sponsored by Plaintiff. The **It's a 10 Trademarks** and **Trade Dress**, and the goodwill associated therewith, are of inestimable value to Plaintiff.

## B.  Defendants' Infringing Acts

Long subsequent to ownership, use and adoption of the **It's a 10 Trademarks** by Plaintiff, and without Plaintiff's consent, Defendants intentionally adopted and began prominent use of the virtually identical marks "10 PLUS" and "MIRACLE LEAVE-IN TREATMENT"

5

(the "Infringing Marks"). Defendants use its Infringing Marks in connection with goods identical to Plaintiff's goods *(i.e.*, leave-in treatment for hair) and on a product that utilizes a virtually identical trade dress to Plaintiff's Trade Dress (hereinafter "Infringing Product").   A depiction of the Infringing Product is attached as **Exhibit D** to the Complaint.

As readily evident upon a comparison of Plaintiff's top-selling **Miracle Leave-In Treatment Products** attached as **Exhibit B** to the Complaint, and Defendants Infringing Product depicted in **Exhibit D** to the Complaint, Defendants' mark and trade dress are blatant imitations of Plaintiff's products and clearly infringe Plaintiff's valuable trademark and trade dress rights. Defendants advertise, promote, sell and/or distribute its Infringing Product in the same channels of trade and markets in which Plaintiff sells its It's a 10 Miracle Products, including major retail stores such as Kroger and Target. To be sure, this month (January of 2013), Plaintiff began receiving notices from clients regarding Defendants' confusingly similar, yet inferior products which are sold next to Plaintiff's products on the shelves at major retail stores such as  Kroger and Target.

Gross sales of Plaintiff's It's a 10 Miracle Products exceeded 50 million for the year 2012 alone, and Plaintiff's It's a 10 Miracle Leave-In Products depicted in Exhibit B is the top selling product of Plaintiff's product portfolio, which may give this Honorable Court an idea as to why Defendants have taken it upon themselves to intentionally copy what essentially constitutes Plaintiff's most valuable product in its vast portfolio of It's a 10 Miracle Products.

Despite constructive notice of Plaintiff's federal trademark registrations and actual notice of Plaintiff's trademark rights by virtue of a cease and desist letter sent to Defendants dated January 21, 2013 (See Declaration of Ed Kelly Par. 2, attached hereto), Defendants continue to infringe Plaintiff's valuable trademark rights. Defendants' infringing activities are likely to

confuse, mislead and deceive an appreciable amount of relevant consumers as to the source, affiliation and sponsorship of Defendants' goods resulting in direct injury to Plaintiff's reputation and goodwill.  A reasonable inquiry and trademark search (even a basic search on the internet for the term MIRACLE LEAVE IN) by Defendants prior to adopting its Infringing Mark would have revealed Plaintiff's It's a 10 Miracle Products as there are countless references to Plaintiff's famous products on the Internet, which are instantaneously revealed upon a search for the term MIRACLE LEAVE IN.  Moreover, it would be disingenuous of Defendants to assert they did not know of Plaintiff's famous It's a 10 Miracle Products given the parties are direct competitors who are immersed within the same industry and target the same customers, and in light of the fame and public recognition established by Plaintiff's **It's a 10 Miracle Products**.

Defendants' Infringing Product is cheaper and inferior in quality to Plaintiff's **It's a 10 Miracle Products**. Upon information and belief, Defendants' **Infringing Products** are made of low-quality ingredients. Upon information and belief, the inferior characteristics of Defendants' Infringing Product includes*, inter alia*, a watery consistency of the product, a heavy perfume smell and low-quality ingredients. Defendants' Infringing Products also contains a thin, plastic coating that is subject to bubbling, ripping and peeling. By confusing consumers and emulating Plaintiff's products, Defendants are falsely representing to the public that their products are of the same high quality as Plaintiff **It's a 10 Miracle Products**.  Moreover, as owners and/or representatives of professional hair salons become aware of Defendants' low quality knock-off product they will be reluctant to take on or continue to purchase the **It's a 10 Miracle Products** because, to the extent that consumers confuse Defendants' Infringing Product with Plaintiff's product, the owners of the salons do not want their customers to believe they are servicing them with a low-quality products. Therefore, Plaintiff It's a 10 is likely to lose retail clients and

professional salons and customers as the Defendants' Infringing Products sell through the market. This impact is real and irreparable in Florida and throughout the United States.

Plaintiff has no adequate remedy at law. Defendants' conduct has caused and, if allowed to continue, will continue to cause irreparable damage to Plaintiff's business, reputation and goodwill.

### III. ARGUMENT

All the factors for issuing a Preliminary Injunction favor Plaintiff's Motion for a Preliminary Injunction. Trademark actions "are common venues for the issuance of preliminary injunctions." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. Fla. 1998). In fact, "injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Suzuki Motor Corp. v. Jiujiang Hison Motor Boat Mfg. Co.*, 2012 U.S. Dist. LEXIS 100402 at 31 (S.D. Fla. June 29, 2012); *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995).

Plaintiff is entitled to a preliminary injunction upon a showing that: (1) there is a substantial likelihood that plaintiff may prevail on the merits; (2) there is a substantial threat that plaintiff will suffer irreparable injury if interlocutory injunctive relief is not granted; (3) the threatened injury to plaintiff outweighs any threatened harm an injunction may do to defendant, and (4) the grant of the injunctive relief will not disserve the public interest. *McDonald's Corp.*, 147 F.3d at 1306 (11th Cir. 1998) (citing *All Care Nursing Serv., Inc. v. Bethesda Mem. Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)).

We discuss each of the foregoing factors as they relate to this action below.

1.  **PLAINTIFF  IS HIGHLY LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS**

As unequivocally demonstrated herein-below, Plaintiff will prevail on its trademark infringement, dilution and unfair competition claims under the Lanham Act and corresponding state and common law claims even though Plaintiff only needs to succeed on but one claim in order to be entitled to a preliminary injunction.

A.  PLAINTIFF WILL PREVAIL ON ITS TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS UNDER THE LANHAM ACT AND UNDER FLORIDA STATUTES AND COMMON LAW

This Circuit has held that a sufficiently strong showing of likelihood of confusion caused by trademark infringement "may by itself constitute a showing of substantial likelihood of prevailing on the merits and/or a substantial threat of irreparable harm." *McDonald's Corp.*, 147 F.3d at 1310 (11th Cir. Fla. 1998); *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. Fla. 1985).

The Lanham Trademark Act of 1946 prohibits the infringement of federally registered trademarks and prohibits unfair competitive practices. *15 U.S.C. 1114(1).* Trademark infringement under *15 U.S.C. 1114(1)* includes the unauthorized use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive…"

The legal standards for Florida statutory and common law claims of trademark infringement and unfair competition under *Florida Statutes § 495.151* and *§ 501.204* are the same as those for federal claims of trademark infringement and unfair competition. *Rain Bird Corp. v. Taylor,* 665 F. Supp. 2d 1258, 1266 (N.D. Fla. 2009).

To prevail on a trademark infringement under the Lanham Act "a party must show (1) that it had prior rights to its mark or name and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two*." Lone Star Steakhouse & Saloon v. Longhorn Steaks*, 106 F.3d 355, 1997 U.S. App. LEXIS 3276, 10 Fla. L. Weekly Fed. C 727, 41 U.S.P.Q.2d (BNA) 1896 (11th Cir. Ga. 1997).  We discuss each of these factors below.

(1)  __Plaintiff  Had Prior Rights to Its Trademark and Trade Dress__

Plaintiff has invested considerable efforts, resources and financial expenditures promoting, marketing and selling its hair care products under the **It's a 10 Trademarks** and **Trade Dress**.  Plaintiff has significant common law interests and rights in and to the terms IT'S A 10, MIRACLE and MIRACLE LEAVE IN for hair care products and has continually and substantially used the **It's a 10 Trademarks** and **Trade Dress** in interstate commerce for hair care products since at least as early as 2006.

Plaintiff's federal trademark registrations for its **It's a 10 Trademarks** serve as constructive notice to Defendants and to third parties of Plaintiff's use and ownership in its mark. Despite such notice, well after Plaintiff began use of its **It's a 10 Trademarks** and **Trade Dress**, Defendants began using a virtually identical mark and trade dress on hair care products in an attempt to emulate Plaintiff's product and in order to profit off of the goodwill established by Plaintiff's **It's a 10 Trademarks** and **Trade Dress.**  Indeed, in January of 2013, Plaintiff began receiving notices from its clients regarding Defendants' new product that was confusingly similar, if not virtually identical, in appearance to Plaintiff's products.

(2)  **The Factors Indicate a Likelihood of Confusion**

The Eleventh Circuit has adopted a seven-factor test to determine whether a likelihood of consumer confusion exists. These factors are:

1) the strength of the plaintiff's mark;

2) the degree of similarity between the plaintiff's mark and the alleged infringing mark;

3) the similarity of the goods and services;

4) the similarity of the parties' retail outlets and customers;

5) the similarity of advertising media;

6) Defendant's intent in adopting the mark; and

7) evidence of actual confusion.

*Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. Fla. 1999).

The Plaintiff need not prevail on all seven factors to support a claim for trademark infringement. *Frehling Enters., Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999); *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 977 (11th Cir. 1983); *E.R. Squibb & Sons, Inc. v. Princeton Pharmaceutical, Inc.*, 17 U.S.P.Q.2d (BNA) 1447 (S.D. Fla. Sept. 4, 1990). For example, if it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's goodwill in its trademark, this fact alone may be enough to justify the inference that there is confusing similarity. *Id*.  We address the relevant factors for determining a likelihood of confusion below.

### i.  *Plaintiff's It's a 10 Trademarks are Inherently Distinctive*

For purposes of strength, trademarks are classified as: (1) generic; (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992). Fanciful, arbitrary and suggestive marks are the

strongest and are deemed inherently distinctive and entitled to protection, while descriptive marks may receive protection if the mark has acquired secondary meaning, and generic terms are not protectable. *Id.*

The **It's a 10 Trademarks** are arbitrary or at the very least suggestive and therefore strong marks. This is further evidenced by the numerous federal trademark registrations on the Principal Register obtained for Plaintiff's **It's a 10 Trademarks.**

Plaintiff's products bearing the It's a 10 Trademarks have extensive sales which exceeded $200 million since inception of the **It's a 10 Miracle Products** since 2006, and the $50 million in gross sales in 2012 alone. Indeed, Plaintiff's **It's a 10 Miracle Products** have earned substantial recognition among professional salons and consumers as a high-quality product, receiving glowing reviews not only from consumers, but celebrities alike. Plaintiff's **It's a 10 Miracle Products** have generated substantial attention and praise on various TV shows and in countless publications, including unsolicited promotion in several top, well-known publications, including but not limited to, *Cosmopolitan*, *Martha Stewart Wedding Magazine*, *People Magazine*, *US Magazine*, *In Style, Good Housekeeping, Star Magazine, Ladies' Home Journal, Redbook, Town & Style, Fitness Magazine, Lucky Magazine* and *Seventeen*. See **Exhibit C** to Plaintiff's Complaint.

### ii. *Defendants' Trademark is Virtually Identical to Plaintiff's Trademark*

The similarity of the marks is determined by considering the overall impression created by the marks as a whole and includes a comparison of the appearance, sound and meaning of the marks, as well as the manner in which the marks are used. *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1507 (11th Cir. Fla. 1985).

Here, Defendants' marks **10 PLUS** and **MIRACLE LEAVE IN TREATMENT** is virtually identical to Plaintiff's registered marks **IT'S A 10** and **MIRACLE LEAVE IN**

**PRODUCTS** in that they are both comprised of the identical, dominant term "MIRACLE LEAVE IN." The respective marks are also phonetically identical and convey the same meaning (i.e., Miracle hair products that you "leave in" your hair). A likelihood of confusion is even greater when an infringer uses the exact trademark. *Suzuki Motor Corp. v. Jiujiang Hison Motor Boat Mfg. Co.*, 2012 U.S. Dist. LEXIS 20366 at 9, 102 U.S.P.Q.2d (BNA) 1555 (S.D. Fla. 2012).

As discussed in further detail below, Defendants' trade dress is confusingly similar to Plaintiff's Trade Dress which only serves to exacerbate the likelihood of confusion between the respective products. (See **Exhibit B** and **Exhibit D** to Plaintiff's Complaint).

### iii.      The Respective Goods are Identical

"The greater the similarity between the products and services, the greater the likelihood of confusion." *John H. Harland Co.*, 711 F.2d at 976. As evidenced by the description of the products on the product themselves (see **Exhibits B** and **D** of the Complaint), Defendants use its Infringing Mark and trade dress on goods *identical* to Plaintiff's goods, namely, leave in hair treatment.

### iv.      The Parties' Customers and Retailers are Identical

Defendants advertise, promote, sell and/or distribute its Infringing Product in the same channels of trade and markets in which Plaintiff sells its **It's a 10 Miracle Products**, including major retail stores such as Kroger and Target. In fact, one of Plaintiff's retailers contacted Plaintiff after finding Defendants' cheaper Infringing Product on the shelves at Kroger. Plaintiff and Defendants sell their products to the same retailers and target the same market. Plaintiff and Defendants are direct competitors who are immersed within the same industry and target the same customers. Accordingly, this factor weighs in favor of a likelihood of confusion –

especially in light of the virtually identical trademark and trade dress used on the respective products.

### v.      *The Parties' Advertising Media are Similar*

This factor looks to each party's method of advertising. *See John H. Harland Co.,* 711 F.2d at 976. Here, both parties advertise their respective products on the internet, including through their respective company websites and through various social media advertising – and to the *same* target audience. Where both parties "utilize the Web as a marketing and advertising facility . . . courts have consistently recognized [that factor] as exacerbating the likelihood of confusion." *Brookfield Communs. v. W. Coast Entm't Corp*., 174 F.3d 1036, 1057 (9th Cir. Cal. 1999).

### vi.   *The Intent of Defendant*

Likelihood of confusion can be demonstrated as a matter of law if Defendants' willful intent is present. *Babbit Electronics, Inc. v. Dynascan Corp*., 38 F.3d 1161, 1179 (11th Cir. 1994); *Frehling Enters., Inc.*, 192 F.3d at 1340.  This factor can be present without direct evidence so long as it may be found that a jury might have inferred that a Defendant purposely chose a mark which was very similar to the trademark owners. *John H. Harland Co. v. Clarke Checks, Inc*., 711 F.2d 966, 977  (11th Cir. 1983). "Intent often must be demonstrated by circumstantial evidence." *E.R. Squibb & Sons, Inc. v. Princeton Pharmaceutical, Inc.,* 1990 U.S. Dist. LEXIS 18598 at 19, 17 U.S.P.Q.2d (BNA) 1447 (S.D. Fla. Sept. 4, 1990).

The second comer to the market has an obligation to select a mark which avoids the *possibility* of confusion. *SunAmerica Corp. v. Sun Life Assurance Co. of Can*., 77 F.3d 1325, 1345 (11th Cir. Ga. 1996); 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 23:21, at 106-07 (2d ed. 1984). Plaintiff submits that Defendants far from satisfied this obligation, and

in fact, adopted the Infringing Mark in bad faith and in a manner that constitutes willful infringement.

Here, it is clear based on a mere review of the products at issue, that Defendants intended to profit off of the good will of Plaintiff's It's a 10 Trademarks and Trade Dress given Defendants' adopted a trademark and trade dress that is virtually identical to Plaintiff's trademark and trade dress. Moreover, Defendants were certainly aware of Plaintiff's famous **It's a 10 Miracle Products** given the parties are direct competitors who are immersed within the same industry and target the same customers, and in light of the fame and public recognition established by Plaintiff's **It's a 10 Miracle Products**. To be sure, Defendants' products are being sold next to Plaintiff's products on the shelves at retail stores as if the products emanate from the same source. Worse yet, Defendants' Infringing Product is sold for $13.99 retail, significantly less than the retail price for Plaintiff's It's A Ten's Miracle Leave-In Product ($17.99).

> "It is so easy for a business man who wishes to sell his goods upon their merits to select marks and packaging that cannot possibly be confused with his competitor's that "courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them."

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc*., 684 F.2d 821, 832 (11th Cir. Ga. 1982).

A reasonable inquiry and trademark search by Defendants prior to adopting its Infringing Mark would have revealed Plaintiff's It's a 10 Miracle Products as there are countless references to Plaintiff's famous products on the Internet. Plaintiff's numerous federal trademark registrations also serve as constructive notice to Defendants and third parties of a claim of ownership in the registered marks. As shown above, although Defendants have received

constructive and actual notice of Plaintiff's rights in its registered trademarks, yet Defendants have infringed, and continue to infringe, Plaintiff's valuable trademark and trade dress rights.

### vii.    *Evidence of Actual Confusion*

The law is well settled in this circuit that evidence of actual confusion is not necessary to a finding of likelihood of confusion (although in this case Plaintiff expects to submit evidence of actual confusion). *Remy Martin & Co., S.A.,* 756 F.2d 1525, 1529-30 (11th Cir. 1985). The Defendants' Infringing Product was just recently introduced to the market. Plaintiff learned of the existence of Defendants' Infringing Product in January of 2013 when Plaintiff began receiving various communications from its retailers noting the confusingly similar and inferior product sold by Defendants at retail stores. Plaintiff expects to submit evidence of actual confusion. Even a cursory observation of the Infringing Product side-by-side with Plaintiff's genuine and original **Miracle Leave In Product** (see illustration on Page 21 immediately below) exemplifies how this confusion can easily occur.  **Additionally**, it is highly likely that there is also confusion in the post-sale context because consumers that encounter Defendants' **Infringing Product** in a direct purchaser's possession will believe Defendants' inferior product is Plaintiff's products.

### B.  PLAINTIFF WILL PREVAIL ON ITS FEDERAL TRADE DRESS INFRINGEMENT CLAIM

The Eleventh Circuit recognizes a claim for trade dress under § 43(a) of the Lanham Act. *John H. Harland Co.,* 711 F.2d at 980 (11th Cir. 1983); *GMC v. Phat Cat Carts, Inc.*, 504 F. Supp. 2d 1278, 1284 (M.D. Fla. 2006).  "The term 'trade dress' refers to the appearance of a product when that appearance is used to identify the producer." *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC,* 369 F.3d 1197, 1202 (11th Cir. 2004). In order to prove a claim for trade dress infringement, a plaintiff must prove: 1) that the product design of the two products is

confusingly similar; 2) that the features of the product design are primarily non-functional; and, 3) that the product design is inherently distinctive or has acquired secondary meaning. *Id.*

The confusingly similar features of Defendants' trade dress when compared with Plaintiff's Trade Dress for its **It's a 10 Miracle Leave In Products** are as follows:



- Both products are comprised of magenta colored spray caps on blue bottles with white type and hints of magenta in the design;

- both make dominant use of the number 10– which is the dominant feature of Plaintiff's federally registered **It's a 10** mark;

- Defendants have placed the designation "10 Plus" in the same location as Plaintiff's "It's a 10" mark on its product, to create the same visual impression;

- both products use a circle design at the top of the product, which is white and outlined in blue with a larger circle border in a light magenta;

- both products use the term **MIRACLE LEAVE IN**, which is in a lower case, san serif font on both products; and

- the products are a similar shape and size.

The foregoing elements of Plaintiff's trade dress are non-functional. For example, the colors of Plaintiff's Trade Dress (i.e., the distinctive shade of magenta and blue) are arbitrary and consumers have come to associate this color combination with Plaintiff's products. Other than Defendants' Infringing Products, no other hair care competitor utilizes a similar color combination. Moreover, the use of the prominent number 10, the placement of text and designs on the It's a 10 Miracle Products are non-functional. Defendants could have adopted any number of colors and designs, but instead chose virtually identical colors, layout and designs as Plaintiff's Trade Dress for use on goods that are identical to Plaintiff's goods.

Plaintiff's Trade Dress has acquired distinctiveness through continuous and extensive marketing, promotion and sales as evidenced by the countless unsolicited promotion and recognition of Plaintiff's **It's a 10 Miracle Products** in various, famous publications and due to the successful sales these products have generated. Plaintiff has spent approximately $15 million to date on the advertising and promotion of the **It's a 10 Miracle Products**, and Plaintiff's sales have exceeded $200 million since its inception in 2006, with $50 million in gross sales in 2012 alone. Indeed, Plaintiff's **It's a 10 Miracle Products** have earned substantial recognition among professional salons and consumers as a high-quality product, receiving glowing reviews not only from consumers, but celebrities alike.

In sum, it is clear that Plaintiff will prevail on the merits of its trade dress claim.

## C.  PLAINTIFF WILL PREVAIL ON ITS TRADEMARK DILUTION CLAIM

The Federal Trademark Dilution Act entitles the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, to an injunction against the user of a mark that is "likely to cause dilution" of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury. 15 *U.S.C.* §

1125(c)(1). To establish a dilution claim, a plaintiff must provide sufficient evidence that (1) the mark is famous; 2) the alleged infringer adopted the mark after the mark became famous; 3) the infringer diluted the mark; and 4) the defendant's use is commercial and in commerce. *Id.*

As previously stated, through extensive and continuous promotion, marketing and sales, Plaintiff's It's a 10 Trademarks and Trade Dress have received wide spread recognition and fame both nationally and internationally and is widely recognized by the general consuming public as a designation of source of Plaintiff's hair care products. Plaintiff has extensively and continuously used its Miracle Leave In Products trademark and trade dress since at least as early as 2006. Defendants recently began using its Infringing Mark and trade dress – after Plaintiff's mark established fame. Defendants' Infringing Mark and trade dress are confusingly similar, if not virtually identical to, Plaintiff's trademark and trade dress, and thus, Defendants Infringing Mark and trade dress are diluting Plaintiff's distinctive brand. Lastly, Defendants sell their Infringing Product in commerce as evidenced by sales at Krogers and various online retailers.

### D.  PLAINTIFF WILL PREVAIL ON ITS UNFAIR COMPETITION CLAIM UNDER FLORIDA STATE LAW

The legal standards for claims under the Florida Deceptive and Unfair Trade Practices Act are the same as those applied under section 43(a) of the Lanham Act. S*untree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. Fla. 2012); *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1323 (11th Cir. 2011).  Thus, for the reasons set forth above, Defendants' conduct constitutes unfair competition under Florida law.

### E. DEFENDANTS ENGAGED IN FALSE ADVERTISING

A claim for false advertising under the Lanham Act arises when "[a]ny person who, on or in connection with any goods… uses in commerce any… false or misleading description of fact,

or false or misleading representation of fact, which… in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods." *15 U.S.C. § 1125(a).* The purpose of the Lanham Act is to protect commercial interests from a competitor's false advertising and to protect trademark owners from having its reputation and goodwill diverted. Here, Defendants have intentionally copied and emulated Plaintiff's trademark and trade dress. Defendants advertise its Infringing Product under its infringing mark and trade dress in order to confuse and deceive consumers to believe that Defendants' products are somehow affiliated with Plaintiff's quality It's a 10 Miracle Products.

## 2.   PLAINTIFFS WILL BE IRREPARABLY HARMED UNLESS DEFENDANTS' UNLAWFUL CONDUCT IS ENJOINED

As set forth above, the facts of this case establish a likelihood of confusion as to source, sponsorship, affiliation and association arising from Defendants' adoption and use of a mark virtually identical to Plaintiff's **It's a 10 Trademarks**. Irreparable harm exists if the plaintiff can show that it will lose control over the reputation of its trademark pending trial. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. Fla. 1998) (citing *Power Test Petroleum Distributors v. Calcu Gas*, 754 F.2d 91, 95 (2d Cir. 1985). "A sufficiently strong showing of likelihood of confusion may by itself constitute a showing of substantial likelihood of prevailing on the merits and/or a substantial threat of irreparable harm." *E. Remy Martin*, 756 F.2d at 1530 (11th Cir. 1985). Here, if Defendants are allowed to continue to sell its infringing products, such sales of Defendants' inferior products will tarnish the goodwill that Plaintiff has worked so hard to establish. The goodwill Plaintiff has established in its It's a 10 Trademarks and Trade Dress will be irreparably injured.

**3.    THE THREATENED INJURY TO PLAINTIFF OUTWEIGHS ANY THREATENED HARM AN INJUNCTION MAY DO TO DEFENDANT**

The mere requirement that a Defendant cease the sale of a product that infringes a plaintiff's mark favors issuance of an injunction when weighed against the hardship on plaintiff if the infringing product continued to be sold. *See*, *Chanel, Inc. v. Mesadieu*, 2009 U.S. Dist. LEXIS 70669 (M.D. Fla. July 23, 2009). The courts have held that when a plaintiff has expended substantial time, money, and other resources to develop the reputation and goodwill associated with its trademark then" the infringing defendant had no right to use the mark, and therefore could suffer no legitimate hardship by being forced to stop that which it had no right to do." *Tiramisu Int'l LLC v. Clever Imps. LLC*, 741 F. Supp. 2d 1279, 1287 (S.D. Fla. 2010); *Gaffigan v. Doe*, 689 F. Supp. 2d 1332 (S.D. Fla. 2009).

Defendants are a multi-million dollar corporation with gross annual sales for it hair care products surpassing Plaintiff, and thus, Defendants can continue their successful business by continuing their sales of non-infringing products. The fact that the Infringing Product is new to the marketplace would support the contention that the imposition of the requested injunction will not be unduly prejudicial to Defendants, and the comparative harm to Plaintiff will be far greater if the infringing product remains in commerce without granting of the requested relief, which would be tailor-made for the facts attendant to the present case.

Requiring a defendant to stop using the mark cannot cause a hardship that could outweigh the harm suffered by plaintiff as a result of the illegal use of its mark when a plaintiff is at risk of losing customer goodwill and Defendants have no legal right to use the plaintiff's mark. *Tiffany*

*(NJ), LLC v. Liu Zheng*, 2011 U.S. Dist. LEXIS 155250 (S.D. Fla. Feb. 1, 2011); *Tiramisu Int'l LLC*, 741 F. Supp. 2d at 1288 (S.D. Fla. 2010).

Moreover, "[to] the extent that a Defendant can show harm, this must be discounted by the degree that a plaintiff can show likelihood of success". *Sec. & Exchange Comn v. World Radio Mission, Inc.,* 544 F.2d 535, 541 (1st Cir. 1976). *See also Teledyne Industries, Inc. v. Wtndmere Products, Inc.,* 433 F. Supp. 710, 741 (S.D. Fla. 1977) ("[I]f the plaintiff has affirmatively demonstrated likely success on the merits, irreparable injury, and the furtherance of the public interest, an injunction otherwise deserved should not be withheld merely because it might also harm the defendant"). Because the Defendants' actions constitute a clear-cut case of trademark infringement and unfair competition, the likelihood that Plaintiff will prevail is exceptionally high.

Finally, Defendants' liability for damages would only increase if its activities were permitted to continue while this action is pending. As the court noted in *Northwestern Bell Telephone Co. v. Bedco of Minnesota, Inc.,* 501 F. Supp. 299, 303 (D. Minn. 1980), preliminarily enjoining copyright infringement:

> "To permit the practice to continue while awaiting trial on the merits, considering the showing that the plaintiff has made, would unfairly burden both parties. The balancing of interests tips the scale in favor of a preliminary injunction: continued infringement not only erodes the plaintiff's statutory copyright but subjects the defendants to ever mount damage and costs exposure…"

4.    **THE PUBLIC INTEREST WILL BE SERVED BY THE ISSUANCE OF A PRELIMINARY INJUNCTION**

Protection of Plaintiff's **It's a 10 Trademarks** enhances the public interest because it serves as an indication to the public of the quality to be expected of Plaintiff's goods and for the

right of the public not to be deceived or confused by misguided opportunists. By enacting the Lanham Act, Congress long ago declared that the public interest to hold persons liable for using a deceptive and misleading trademark is paramount and serves as protection both for consumers and trademark owners. *See, Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.,* 522 F.3d 1200, 1208 *(11th Cir. Ga. 2008)*; *see e.g.*, *United States v. Torkington*, 812 F.2d 1347, 1353 (11th Cir. 1987) ("the enforcement of trademark laws benefits consumers even in cases where there is no possibility that consumers will be defrauded"). An injunction serves the public interest by protecting customers from being misled and confused as to the source of unauthorized merchandise bearing plaintiff's trademarks. *Chanel, Inc. v. Chanel255.org*, 2012 U.S. Dist. LEXIS 73894 at 15 (S.D. Fla. May 29, 2012); *BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc*., 785 (M.D. Fla. 1991); *Nike, Inc. v. Leslie*, 1985 U.S. Dist. LEXIS 16694 at 6 (M.D. Fla. June 21, 1985).

Where, as here, Congress has declared the public interest through enactment of a statute, a preliminary injunction to prevent violation of the statute is particularly appropriate. *See, James Burrough, Ltd. v. Sign* of *Beefeater,* Inc., 540 F.2d 266, 276 (7th Cir. 1976). The Supreme Court has recognized that "[n]ational protection of trademarks is desirable… because trademarks foster competition and the maintenance of quality by securing to the producer the benefits of good reputation." *Park 'N Fly Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 198 (1985).

Plaintiff seeks to prevent the public confusion which would inevitably result from the use of confusingly similar marks by two different businesses providing identical goods to the same customers. There can be no doubt that the public interest will be served by entry of a preliminary injunction in the present case.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction enjoining Defendants from using its infringing trademarks and trade dress should be granted. The relief sought is more fully set forth in the Proposed Order submitted herewith.  Plaintiff further requests oral argument on the motion at this court's earliest available date.


DATED: January 25, 2012


Respectfully submitted,

*Michael J. Sacks*
_____
Michael Sacks  FBN: 65625
Brush & Sacks
7210 Wisteria Avenue
Parkland, FL 33076
954 575 8691 (phone)
msacks@bellsouth.net (email)

OF COUNSEL:
Edward P. Kelly
Merry L. Biggerstaff
Tiajoloff & Kelly LLP
The Chrysler Building, 37th floor
405 Lexington Avenue
New York, New York 10174
212 490 3285 (phone)
212 490 3295 (fax)