UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-60154-CIV-COHN/SELTZER

IT'S A 10, INC.,

    Plaintiff,

vs.

BEAUTY ELITE GROUP, INC.,
and BASIM SHAMI,

    Defendants.
_____/

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** is before the court upon Plaintiff's Motion for Preliminary Injunction and Request for Oral Argument [DE 6].  The Court has considered the motion, Defendants' response [DE 10], the evidence presented and arguments of counsel at the March 8, 2013, hearing, and is otherwise fully advised in the premises.

## I. BACKGROUND

On January 22, 2013, Plaintiff It's a 10, Inc., filed this action against Defendants Beauty Elite Group, Inc. ("BEG") and Basim Shami, bringing the following claims: (1) registered trademark infringement, in violation of 15 U.S.C. § 1114; (2) trade dress infringement, in violation of 15 U.S.C. § 1125(a); (3) federal trademark dilution, under 15 U.S.C. § 1125(c); (4) false designation of origin and false advertising, under 15 U.S.C. § 1125(a); (5) state common law trademark infringement; (6) state-law deceptive acts and unfair trade practices, pursuant to Florida Statutes § 501.201; (7) trademark counterfeiting, under 15 U.S.C. § 1114; and (8) state-law unjust enrichment.  According to the Complaint, Defendants have infringed on Plaintiff's trademarks by selling imitations of Plaintiff's product in containers that are labeled and designed in a way that

mimics Plaintiff's marks and trade dress.  Plaintiff seeks injunctive relief, as well as compensatory, statutory, and punitive damages.  In the instant motion, Plaintiff seeks a four-part preliminary injunction requiring that Defendants (1) cease manufacturing or selling the allegedly infringing product, (2) cease using 'Miracle' or '10' on its product label, (3) refrain from destroying evidence relevant to this case, and (4) produce certain records in Defendants' possession for Plaintiff's inspection.  See DE 6-3.

Plaintiff offers evidence, including the exhibits attached to the Complaint, that Plaintiff owns a number of trademarks related to its hair-care products and that it makes constructive use of such marks.  See DE's 1-4, 1-5, 1-6, 1-7, 6-1.  Plaintiff also submits images of what it alleges is Defendants' infringing product – a container labeled "10-PL+US Miracle Leave-In Treatment," using font, colors, and design similar to those used on Plaintiff's containers of "It's a 10 Miracle Leave-In Product."  See DE's 1-5, 1-8.  At the March 8 hearing, Plaintiff's counsel presented the parties' respective bottles to the Court and entered them into evidence.  Both bottles are purple with a magenta cap, and with magenta and white text and accents.  The bottles are roughly the same height, and both use the phrases "Miracle Leave-In" to describe their product.  Both bottles place the '10' approximately three-quarters of the way up the front of the bottle.  The '10's' are nearly the same size, and they are both oriented horizontally across the respective labels.  The back label of Defendants' product is also similar to the back label of Plaintiff's product.  At the top of Plaintiff's back label, it states that "It's a 10 does 10 things instantly."  It then numbers and lists those ten features.  At the top of Defendants' back label, it states that "Miracle Leave-in Treatment is a Salon Inspired

formula that instantly" does fourteen things.  It then numbers and lists those features, using the same white text and purple background as is found on Plaintiff's label. Further, Plaintiff's President and CEO, Carolyn Plummer, submitted an affidavit in which she states that she has received several inquiries from customers concerning Defendants' product.  DE 6-1 ¶ 14.  Ms. Plummer claims that the confusion related to Defendants' product is causing irreparable harm to Plaintiff's business.  Id.  Additionally, Plaintiff's counsel sent Defendants a cease and desist letter on January 21, 2013, requesting that Defendants respond within five days.  DE 6-2; DE 10-3 at 5.  Plaintiff filed suit the following day.

Defendants respond that Plaintiff's allegations have been mooted by subsequent events.  Defendants represent that their attorney contacted Plaintiff's counsel within five days of receiving the letter to discuss the issues contained therein.  DE 10-2 at 2.  On February 6, 2013, defense counsel sent a letter to Plaintiff's counsel stating that BEG would take the following actions:

> (1) Cease immediately to ship all units of the accused product.
>
> (2) Remove all shrink wrapped labels from its product that [Plantiff accuses] of trade dress infringement.  We will then destroy the wrappers.
>
> (3) Change the packaging on our product.  Specifically, Beauty Elite Group will change the color, eliminate the word "miracle" and will emphasize its brands "SoSilk" and "BioPlus" with a reconfigured label.

DE 10-4 at 2.  Further, the letter stated that BEG would take such steps without any return commitment from Plaintiff.  Id.  On February 18, 2013, defense counsel sent another letter to Plaintiff's counsel in which he represented that BEG had ceased using

3

the allegedly infringing label, and attached a picture of the newly-designed bottle.  DE 10-5 at 2-4.  On February 26, 2013, defense counsel sent yet another letter to Plaintiff's counsel in which he attached a picture of the final new design for BEG's "10 PL+US" product line.  DE 10-6 at 3.  The new bottle is white with a pink label and maroon cap; more prominently displays BEG's "SoSilk" and "BIOPL+US" trademarks; displays the "10 PL+US" mark in a vertical manner in the middle of the bottle; and uses a different font.  DE 10 at 3.  Additionally, the back label no longer contains the word 'instantly,' nor does it number and list the product's features.  DE 22 at 4.

At the hearing, Plaintiff's counsel presented a sworn affidavit from Jennifer O'Dell, a manager at a beauty supply store in Denton, Texas.  In the affidavit, she states that she purchased two bottles of BEG's product, which used BEG's old label design, from a Kroger's in Denton on February 27, 2013.  Counsel also attached a sales receipt for Ms. O'Dell's purchase, as well as the actual bottles of BEG's product that she bought.  In response, defense counsel represented that BEG sells products through distributors, rather than directly to retail outlets such as Kroger's.  Therefore, while BEG had destroyed bottles containing the former label, there may still be some residual product remaining in stores.  In the instant motion, Plaintiff seeks to enjoin Defendants from using both the old and the new labels.  With regard to the new label, Plaintiff objects to BEG's use of the number "10" on the front of its bottle.  Defendants oppose the relief requested.

## II. PRELIMINARY INJUNCTION STANDARD

In order to obtain a preliminary injunction, Plaintiff must establish the following four elements: (1) a substantial likelihood that it will prevail on the merits; (2) a

substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to Plaintiff outweighs the threatened harm the injunction may do to Defendants; and (4) granting the preliminary injunction will not disserve the public interest.  Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994).  Because a "preliminary injunction is an extraordinary and drastic remedy," it is "not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites." Id. (quoting Northeastern Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990)); see also McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (noting that movant has the burden of persuasion as to all four elements).

### III. ANALYSIS

As an initial matter, Defendants assert that the Court should not enter a preliminary injunction against Mr. Shami because the Court does not have personal jurisdiction over him.  Mr. Shami states in his declaration that he has no physical or business presence in Florida; owns no property in Florida; and does not personally produce, market, distribute, sell, or offer to sell the allegedly infringing label.  DE 10-1 at 2.  In the Complaint, Plaintiff refers only to actions taken by "Defendants," but does not show that Mr. Shami's actions were taken in his personal capacity, as opposed to as an officer of BEG.  See DE 1.  Moreover, when this issue was raised at the hearing, Plaintiff declined to offer any evidence of the Court's personal jurisdiction over Mr. Shami.  Accordingly, because there remains significant doubt as to jurisdiction regarding Mr. Shami, the Court will deny the instant motion as it pertains to him.

The Court will now proceed to the merits of the motion as it relates to BEG.  The

Court will address each part of the four-part injunction proposed by the Plaintiff.

### A. Manufacturing and Selling the Allegedly Infringing Product

Plaintiff asks the Court to enjoin BEG from manufacturing or selling the allegedly infringing product, including both the old and the new label designs.  The Court will first look at whether BEG should be enjoined from selling its product containing the old label, and then proceed to an analysis of its new label.

#### i. The old label

*a. Likelihood of success on the merits*

First, Plaintiff must demonstrate a likelihood that it will prevail on the merits of its claims.  To prevail on its claim for trademark infringement under the Lanham Act, as well as on its state-law claims for infringement and unfair competition, Plaintiff must show "(1) that it had prior rights to its mark or name, and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers [are] likely to confuse the two."  Lone Star Steakhouse & Saloon v. Longhorn Steaks, 106 F.3d 355, 358 (11th Cir. 1997); Rain Bird Corp. v. Taylor 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009) (noting that "the legal standards for Florida statutory and common law claims of trademark infringement and unfair competition . . . are the same as those for federal claims of trademark infringement and unfair competition").  As noted above, Plaintiff has provided evidence that it owns a number of trademarks related to its product line, and that it makes constructive use of such trademarks.  See DE's 1-4, 1-5, 1-6, 1-7, 6-1.  Defendants do not dispute Plaintiff's prior rights in its marks.

In determining whether a likelihood of confusion exists, the Court considers the

following factors: (1) the strength of the mark; (2) the degree of similarity between Plaintiff's mark and the infringing mark; (3) the similarity of the products that the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of the parties' advertising media; (6) BEG's intent in using the mark; and (7) evidence of actual confusion.  Frehling Enters. v. Int'l Select Group, Inc., 192 F.3d 1330, 1335 (11th Cir. 1999).  Plaintiff need not prevail on all seven factors to succeed in its trademark infringement claim.  Rather, the Court looks to the overall balance of the factors to see if a reasonable consumer would be confused by the infringing mark. See id. at 1341-42; see also Dippin' Dots, Inc. v. Frosty Bites Distrib., 369 F.3d 1197, 1208 (11th Cir. 2004) (denying a preliminary injunction where six factors weighed in favor of granting an injunction, but the two marks at issue were not confusingly similar). With regard to the first factor, stronger marks generally receive greater protection. Marks are classified, in order of increasing strength, as generic, descriptive, suggestive, arbitrary, or fanciful.  Two Pesos, Inc. V. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). As the Eleventh Circuit has explained,

> Generic marks refer to a particular genus or class of which an individual [product] is but a member; such marks may never receive . . . protection. Descriptive marks directly describe a characteristic or quality of the service [or product], and can only be protected if they have acquired "secondary meaning." "Vision Center," when used to describe a place to purchase eyeglasses, would be a descriptive name. Suggestive marks subtly connote something about the [product] so that a consumer could use his or her imagination and determine the nature of the [product]. The term "Penguin" would be suggestive of refrigerators . . . . An arbitrary or fanciful mark is a word in common usage applied to a [product] unrelated to its meaning; "Sun Bank" is such an arbitrary or fanciful mark when applied to banking services.

Freedom Sav. & Loan Ass'n v. Way, 757 F.2d 1176, 1182 n.5 (11th Cir. 1985).

7

Suggestive, arbitrary, and fanciful marks are each entitled to protection. Two Pesos, 550 U.S. at 768. Here, Plaintiff's "It's a 10" mark is suggestive. The phrase "It's a 10" may connote the high quality of the product or the beauty of its user. It does not directly describe a hair-care product, though it does generally describe physical attractiveness. Thus, because the phrase at issue is generally associated with beauty, the Court concludes that it is suggestive as to a beauty product. See Freedom Sav. & Loan Ass'n, 757 F.2d at 1183 (finding that a mark that is generally associated with a type of services qualifies as 'suggestive'). As for the "Miracle Leave-In Treatment" mark, it is less clear that this would reach the level of suggestive as a stand-alone term. However, when used in conjunction with "It's a 10," the pair is sufficiently distinctive to receive protection.

The second factor also weighs decisively in favor of granting an injunction. The similarity of the marks is determined by considering the overall impression created by the marks, including their appearance, sound, and meaning, as well as the manner in which they are used. Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1507 (11th Cir. 1985). In this case, the marks themselves are strikingly similar: BEG's use of "10 PL+US" and "Miracle Leave-In Treatment" is very close in language and meaning to Plaintiff's "It's a 10" and "Miracle Leave-In Treatment." See id. Moreover, the manner in which they are displayed contributes to the likelihood of confusion. The placement of the marks on the respective bottles, the horizontal orientation of the marks, and the colors and fonts used to display them would likely make it difficult for consumers to distinguish between the two products.

The third factor, regarding the similarity of the products, likewise favors Plaintiff.

"This factor requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." Frehling Enters., 192 F.3d at 1338.  The bottles have the same color patterns; both are marketed as "miracle leave-in" hair treatments; and both are meant to 'instantly' do a number of things to the consumer's hair.  Given the physical similarities of the bottles, and the fact that the products are supposed to serve the same function, consumers would likely think they are produced by the same company.

The fourth factor is inconclusive.  Plaintiff alleges that the products are sold in the same stores, while BEG represents that its product is not sold in Florida.  DE 1 ¶ 26; DE 10-1 at 3.  The fifth factor is likewise inconclusive.  Plaintiff claims that the companies both advertise through their respective websites and social media, but neither party produces evidence on this point.  The sixth factor, regarding BEG's intent, favors granting the preliminary injunction.  It seems clear, based on the similarity of the marks and trade dress, that BEG deliberately copied Plaintiff's bottle design.  See John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 977 (11th Cir. 1983) (finding that if a defendant adopted the plaintiff's mark with an intent to benefit from the plaintiff's reputation, this may contribute to inference that there is confusing similarity).  Generally, "a second user of a mark has a duty to avoid confusion with a first user's mark." SunAmerica Corp. v. Sun Life Assurance Co. of Can., 77 F. 3d 1325, 1345 (11th Cir. 1996).  BEG plainly failed in this regard.   Finally, the seventh factor, concerning actual confusion, also favors Plaintiff.  Plaintiff submitted evidence that its customers were actually confused by BEG's old label, and Defendants have not refuted such evidence.

DE 6-1 ¶ 14.  Taking these factors together, it appears that none weigh against granting an injunction, and all but two weigh clearly in favor.  On the whole, the Court finds that there is substantial likelihood that a reasonable consumer would confuse the parties' products.

### b. Threat of irreparable harm

Plaintiff asserts that, without the preliminary injunction, it will suffer irreparable harm because consumers will continue to confuse its product with BEG's.  The Court finds this argument persuasive.  The Eleventh Circuit has held that "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm."  E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, 756 F.2d 1525, 1530 (11th Cir. 1985).  Therefore, because Plaintiff has shown a strong likelihood of confusion, it has likewise established a threat of irreparable harm.

Defendants respond that there is no threat to Plaintiff because BEG has destroyed all of the former labels it had in its possession.  However, even if the complained of activity has ceased, injunctive relief is still appropriate if there is a "cognizable danger of future violations, given [a party's] past violations."  Clayton v. Howard Johnson Franchise Sys., Inc., 730 F. Supp. 1553, 1558 (M.D. Fla. 1988); see also Snair v. City of Clearwater, 787 F. Supp. 1401, 1415 (M.D. Fla. 1992) (finding that "federal courts should not grant injunctive relief when the conduct sought to be stopped has ceased and is unlikely to resume.").  Here, BEG has offered no proof, beyond its own statements, that its has in fact ceased distributing and selling the old labels.  Plaintiff, on the other hand, provided convincing evidence in Ms. O'Dell's affidavit that

BEG's product containing the old label was on sale as recently as February 27, 2013, three weeks after BEG represented to Plaintiff that it would destroy the label. Therefore, based on the record evidence, the Court concludes that Plaintiff still suffers a threat of irreparable harm.

### c. Balance of harms

Plaintiff contends that the injury it would suffer from the Court denying the preliminary injunction as to the old label outweighs the harm the injunction would do to BEG. The Court agrees. In Gaffigan v. Doe, 689 F. Supp. 2d 1332, 1341 (S.D. Fla. 2009), the Court found that a plaintiff who had spent substantial time and money developing the quality and reputation of its marks would suffer substantial harm if the injunction was not granted. In contrast, a defendant who had no right to use the mark could suffer no legitimate hardship by being enjoined from using it. Id.; see also Chanel, Inc. v. Chanel255.org, No. 12-21762-CIV-ALTONAGA/SIMONTON, 2012 U.S. Dist. LEXIS 73894, at *15 (S.D. Fla. May 29, 2012) (finding that the defendant would not suffer any legitimate hardship from the injunction because it had no legal right to use the subject marks). In this case, Ms. Plummer states in her affidavit that she has "spent over $15 million on the advertising promotion of the [It's a 10] trademark and trade dress," and that she has "invested an immeasurable amount of time and effort in the development of the It's a 10 brand and product line." DE 6-1 at 2-3. BEG, on the other hand, has no legal or equitable right to use trade dress and marks that have a substantial likelihood of causing confusion with Plaintiff's product. Moreover, BEG represents that it has ceased using the trade dress and marks at issue, with the exception of the '10 PL+US' mark. Accordingly, the Court finds that the balance of

11

harms tips clearly in favor of granting the preliminary injunction.

### d. The public interest

Finally, Plaintiff asserts that the public interest would be served by the preliminary injunction by protecting customers from being misled as to the source of the infringing merchandise.  The Eleventh Circuit has explained that "the 'public interest relevant to the issuance of [an] . . . injunction is the public's interest in avoiding unnecessary confusion." Angel Flight of Ga. v. Angel Flight Am., Inc., 522 F.3d 1200, 1209 (11th Cir. 2008); see also Davidoff & Cie, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1304 (11th Cir. 2001) (finding that an injunction was "not adverse to the public interest, because the public interest is served by preventing consumer confusion in the marketplace.").  In this case, as previously described, it is likely that the public would be confused by BEG's product, and so the Court concludes that the public interest would be served by a preliminary injunction.  Therefore, because Plaintiff has adequately established all four elements necessary to preliminarily enjoin the manufacturing and selling of the old label, the Court will grant the injunction on this issue.

### ii. The New Label

As noted above, Plaintiff has the burden to establish all four prerequisites to a preliminary injunction.  The Court will not enjoin BEG's use of the new label because Plaintiff has failed to show a threat of irreparable harm.

Plaintiff alleges that it would be irreparably harmed by the confusion caused by BEG's product.  Accordingly, the Court turns to the seven-factor analysis for determining whether there is a likelihood of confusion.  On the first factor, as described above, Plaintiff's marks are suggestive, and therefore entitled to protection.  The

second factor, however, weighs strongly against granting a preliminary injunction.  The parties' bottles are different shapes and colors, and they use different fonts.  BEG's label no longer uses the word "miracle," and it places the "10" in a different location on the bottle.  Moreover, BEG's label prominently displays its own "SoSilk" and "BIOPL+US" marks.

The third factor also favors BEG because it is unlikely that the public would think the two products are made by the same company.  The products have their respective producers' distinctive marks on them, and, as noted above, the containers look substantially different.  As described above, the fourth and fifth factors are inconclusive, as there is no record evidence that the products are sold in the same stores or advertised in the same media.  The sixth factor, regarding BEG's intent, weighs against granting the injunction.  The current incarnation of BEG's bottle design has been substantially changed, apparently with the purpose of avoiding any further infringement allegations.  Given BEG's willingness to alter its design, there is no longer any evidence that BEG is intentionally trying to copy Plaintiff's marks and trade dress.  The seventh factor, concerning actual confusion, also favors BEG, though only to a limited degree.  Plaintiff submitted evidence that its customers were actually confused by BEG's old label, but they have not submitted such evidence with regard to the new label.  And indeed, BEG's new label was only finalized three weeks ago, and it is unclear if it is in retail stores at this time.

Therefore, the only factor that weighs toward granting the injunction is the strength of Plaintiff's marks.  An examination of the other factors — particularly the second, third, and sixth — shows that no reasonable consumer would confuse

Plaintiff's product with BEG's product containing the new label design.  See Dippin' Dots, 369 F.3d at 1208.  Consequently, the Court concludes that Plaintiff has failed to show that it would be irreparably harmed if the preliminary injunction is not granted as to the new label.  Therefore, the motion will be denied in this regard.

### B. Defendants' Use of 'Miracle' or '10'

Plaintiff seeks to enjoin BEG from "using 'Miracle' or '10' as a trademark, trade name, or service mark for the sale, promotion, advertising, distribution, or manufacture of beauty or hair care products."  DE 6-3 at 1.  At the hearing, Plaintiff argued that, because BEG's old label had already caused so much customer confusion, the only way to remedy the harm would be to prohibit them from using either 'Miracle' or '10' anywhere on their product.  The Court disagrees.  First, although Plaintiff has a number of trademarks for hair and beauty products with the word 'Miracle' at the beginning of the name, such marks would not necessarily preclude competitors from otherwise incorporating the word into their products.  And indeed, Defendants submitted evidence at the hearing, specifically Defense Exhibit 5, that other companies already use the word 'Miracle' in their hair-care product names.  Moreover, BEG has removed 'Miracle' from its new label, and will be enjoined from using its old label.  Therefore, the Court sees no need to grant such a broad injunction against the use of 'Miracle.'

Nor has Plaintiff shown a protectable interest in the number '10.'  As Defendants point out, there are 111 hair products that already use the number '10' in their names. DE 10-1 at 3; DE 10-7 at 2-5.  Additionally, Defendants have submitted evidence showing that the mark 'TEN,' in the context of hair-care products, is already registered to a third party.  See DE 10-8 at 2.  The more that third parties make use of a mark, the

14

less protection the mark will receive.  Frehling Enters., 192 F.2d at 1336 (citing John H. Harland, 711 F.2d at 975).  Given the widespread use of '10' in the industry, the Court concludes that Plaintiff does not have a protectable legal interest in '10,' and thus is unlikely to succeed on the merits of this claim.  See Vraiment Hospitality, LLC v. Binkowski, No. 8:11-CV-1240-T-33TGW, 2012 U.S. Dist. LEXIS 59331, at *23 (M.D. Fla. Mar. 19, 2012) (finding that plaintiff did not have a protectable trade dress, and was not likely to succeed on the merits).  Accordingly, the Court will deny relief on this element of Plaintiff's injunction request.

### C. Spoliation of Evidence

Plaintiff moves to enjoin BEG from destroying or otherwise tampering with its business records and other forms of evidence relevant to Plaintiff's claims.  The Court will deny this request because Plaintiff has not shown that such spoliation is likely to occur.  A party seeking an injunction must show the threat of irreparable harm, and such harm must be actual and imminent, not remote or speculative.  Windsor v. US, 379 F. App'x 912, 916 (11th Cir. 2010).  In Windsor, the plaintiff sought to enjoin the defendant from destroying documents.  The defendant had destroyed documents in previous, related litigation two-and-a-half years prior, but had not done so in the litigation at hand.  Id.  Because the plaintiff could not show that the defendants had destroyed evidence in the subject litigation, or that there was an immediate threat of them doing so, the court held that the harm was merely speculative.  Id.  Here, Plaintiff offers no proof that BEG is likely to damage or destroy its business records or other evidence relevant to this case.  Without a showing to the contrary, the Court concludes that the purported harm is speculative, rather than actual or imminent.  Therefore, the

15

Court will deny relief on this issue.

### D. Document Production

Lastly, Plaintiff seeks an injunction requiring BEG to:

> [maintain] and [provide] to Plaintiff's counsel, on a monthly basis, an accounting of all inventory and sales of the Infringing Product from inception through the final hearing on Injunction and disposition of this action.

DE 6-3 at 2. Defendants argue that this is essentially an unserved discovery request, and that injunctive relief would therefore be inappropriate at this stage. The Court agrees. "[I]njunctive relief is not normally available in aid of or in lieu of discovery." Humble Oil & Ref. Co. v. Harang 262 F. Supp. 39, 44 (E.D. La. 1966). The proper procedure to obtain this information can be found in Federal Rule of Civil Procedure 34. If Defendants refuse to comply, Plaintiff may move for Rule 37 sanctions. Humble Oil & Ref. Co. v. Sun Oil Co., 175 F.2d 670, 671 (5th Cir. 1949). Plaintiff has given no reason why the normal discovery process would be insufficient. Accordingly, the preliminary injunction will be denied as to this request.

### IV. CONCLUSION

For the foregoing reasons it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Preliminary Injunction [DE 6] is hereby **GRANTED in part and DENIED in part** as follows:

1. The motion is **GRANTED** as it pertains to Defendant Beauty Elite Group, Inc.'s use of its former label. Beauty Elite Group, Inc., and any of its affiliates, subsidiaries and related entities and/or companies, agents, servants, employees, owners, officers, assigns and successors in interest

are hereby restrained and enjoined pending the final hearing and determination of this action from manufacturing, importing, exporting, distributing, advertising, offering for sale or selling throughout the world any bottles containing the label and design, including the front and back label, as those submitted in evidence at the March 8, 2013, hearing, and displayed in Exhibit D to the Complaint [DE 1-8].  Specifically, the enjoined label contains the following elements: it is purple with a magenta cap, and magenta and white text and accents; displays the phrase "miracle leave-in"; prominently places the number '10' approximately three-quarters the way up the bottle; on the back label it claims that its product "instantly" does fourteen things, and then those features are numbered and listed.  While this injunction does not necessarily apply to each of these elements individually, it does apply to the label as a whole.

2. Plaintiff shall provide security in the amount of $15,000.00 by no later than **April 1, 2013**.

3. In all other respects, the motion is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 18th day of March, 2013.

_____
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF