UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60154-CIV-COHN/SELTZER

IT'S A 10, INC.,

     Plaintiff,

v.

BEAUTY ELITE GROUP, INC.,

     Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN
PART MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant's Motion for Summary

Judgment [DE 72] ("Motion").  The Court has considered the Motion, Plaintiff's

Opposition [DE 81], and Defendant's Reply [DE 84], and is otherwise advised in the

premises.

**I.   BACKGROUND**

     This action arises out of Defendant Beauty Elite Group, Inc.'s alleged attempt to

capitalize upon the goodwill of Plaintiff It's a 10, Inc. in the marketplace.  Plaintiff sells a

variety of hair-care products.  DE 1 ¶ 7.  Plaintiff has invested heavily in the

development and marketing of its products, with the aim of creating a unique and

recognizable brand.  DE 78 at 1–2.  Plaintiff has obtained numerous trademark

registrations in furtherance of its branding efforts, including the marks "It's a 10" and

"Miracle Leave In Products."  DE 79-1 at 4–5.  Plaintiff's work has led to commercial

success, and has entrenched Plaintiff in the marketplace as the creator of a well-known

product line.  DE 78 at 2; DE 78-1; DE 78-2.

Among Plaintiff's products is the It's a 10 Miracle Leave In Product (the "Miracle Product").  The Miracle Product is intended to be applied to and left in a user's hair to repair damaged hair, add shine, detangle, control frizz, prevent split ends, stop hair breakage, and so forth.  DE 75 at 11.  The Miracle Product appears as pictured below:



DE 1 at 7.[1]

Plaintiff contends that Defendant seeks to capitalize on the goodwill Plaintiff has earned in the marketplace by creating a product that mimics the Miracle Product.

---

[1] The parties have provided the Court with numerous and varied depictions of each of their products throughout this litigation, in addition to physical samples of their products.  The Court will consider only those depictions of the parties' products appropriately submitted as evidence.  Nevertheless, as a courtesy to the readers of this Order, the Court will include images herein drawn from other non-evidentiary sources that more clearly illustrate the appearance of the products at issue.

Defendant's product is intended for substantially the same uses as the Miracle Product. See DE 79-5.  Defendant has sold its product in the package illustrated below (the "Old Bottle"):



DE 1 at 7.

On January 22, 2013, Plaintiff filed this action on the basis of what it views as Defendant's unlawful attempt to sell a knock-off of the Miracle Product.  See DE 1.  To this end, Plaintiff asserts the following causes of action: (1) trademark infringement under 15 U.S.C. § 1114; (2) trade-dress infringement under 15 U.S.C. § 1125(a); (3) trademark dilution under 15 U.S.C. § 1125(c); (4) false designation of origin and false advertising under 15 U.S.C. § 1125(a); (5) state common-law trademark infringement; (6) deceptive acts and unfair trade practices under Florida Statutes

section 501.201 et seq. ("FDUTPA"); (7) trademark counterfeiting under 15 U.S.C.

§ 1114; and (8) unjust enrichment.  DE 1 ¶¶ 32–66.  Plaintiff seeks injunctive relief, as

well as compensatory, statutory, and punitive damages.  Id.

at 15–16.

On February 6, 2013, Defendant informed Plaintiff that it had ceased using the

Old Bottle, and would sell its product in a new package (the "New Bottle") designed to

differentiate Defendant's product from the Miracle Product and ameliorate infringement

concerns (see DE 79-13):



DE 10 at 3.  Plaintiff continues to prosecute this action notwithstanding Defendant's

avowed intent not to sell its product in the Old Bottle.  Defendant has therefore moved

for summary judgment on all claims, contending that the Old Bottle did not infringe upon

Plaintiff's rights, and that its abandonment of the Old Bottle has ameliorated any threat of infringement.

## II.  LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To satisfy this burden, the movant must point out to the court that "there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).  Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial."  Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990).

Essentially, so long as the non-moving party has had the opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker, 911 F.2d at 1577.  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249–50 (citations omitted).

The Court's function at the summary-judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  In making this determination, the Court must discern which issues are material: "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.  In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

## III.  DISCUSSION

### A.  Count I: Trademark Infringement (15 U.S.C. § 1114)

Defendant argues that Plaintiff's federal trademark-infringement claim fails because Plaintiff can provide no evidence of actual damages, and because Plaintiff cannot establish a likelihood of confusion.  The Court rejects Defendant's contention that an absence of actual damages dooms Plaintiff's trademark claim, as the claim does not require a showing of actual damages.  Moreover, the Court finds that Plaintiff has provided sufficient evidence to raise an issue of fact on likelihood of confusion with regard to the Old Bottle.  Nevertheless, the Court will grant summary judgment on the

infringement claim as it pertains to the New Bottle, because the marks as used on the New Bottle are sufficiently dissimilar to those on the Miracle Product to preclude a likelihood of confusion.

A plaintiff bringing a claim for infringement of a registered trademark under 15 U.S.C. § 1114 must plead and establish "that the infringer (1) used the mark in commerce, without consent; and (2) that the use was likely to cause confusion." Aronowitz v. Health-Chem Corp., 513 F.3d 1229, 1239 (11th Cir. 2008) (per curiam). A prevailing plaintiff may recover the defendant's profits and the cost of the action, and need not demonstrate actual damages. Burger King Corp. v. Weaver, 169 F.3d 1310, 1321 (11th Cir. 1999); Roto-Rooter Corp. v. O'Neal, 513 F.2d 44, 45–46 (5th Cir. 1975); 15 U.S.C. § 1117(a). The Court therefore rejects Defendant's contention that Plaintiff's infringement claim fails for lack of actual damages.

Defendant also argues that Plaintiff has provided no evidence to establish a likelihood of confusion to support its infringement claim. In determining whether a likelihood of confusion exists, the Court should look to the following factors: "(1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion." Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 122 F.3d 1379, 1382 (11th Cir. 1997) (per curiam). The Court should consider all of the factors together, and no single factor is dispositive. Jellibeans, Inc. v. Skating Clubs of Ga., Inc., 716 F.2d 833, 844 (11th Cir. 1983). Because the Old Bottle and the New Bottle exhibit significant differences in

appearance, the Court will address likelihood of confusion with respect to each bottle in turn.

### 1.  <u>The Old Bottle</u>

The first factor of the likelihood-of-confusion analysis is the type of the plaintiff's mark.  For purposes of the Motion, the Court considers Plaintiff's marks at issue to be the "It's a 10" mark and the "Miracle Leave In Products" mark.  Although the Complaint herein lists numerous trademark registrations belonging to Plaintiff (<u>see</u> DE 1 at 4), the allegations of the Complaint and the parties' papers make clear that Plaintiff's "It's a 10" mark and "Miracle Leave In Products" mark form the core of the action.  Indeed, the Court does not perceive how Plaintiff could credibly bring a claim for infringement of its other marks, such as the "Miracle Hair Mask" mark, on the basis of Defendant's allegedly infringing hair-conditioner bottle bearing a "Miracle Leave In Treatment" mark.[2]

Here, the types of Plaintiff's marks weigh in favor of a likelihood of confusion. Marks are classified, in order of increasing strength, as generic, descriptive, suggestive, arbitrary, or fanciful.  <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 768 (1992). As the Eleventh Circuit has explained:

> Generic marks refer to a particular genus or class of which an individual [product] is but a member; such marks may never receive . . . protection. Descriptive marks directly describe a characteristic or quality of the [product], and can only be protected if they have acquired a "secondary meaning."  "Vision Center," when used to describe a place to purchase eyeglasses, would be a descriptive name.  Suggestive marks subtly connote something about the [product] so that a customer could use his or her imagination and determine the nature of the [product]. The term "Penguin" would be suggestive of refrigerators. . . . An arbitrary or fanciful mark is a word in common usage applied to a [product] unrelated to its

---

[2] As discussed at greater length herein, the use of the common self-laudatory epithet "Miracle" adds little to the strength of a mark.

meaning; "Sun Bank" is such an arbitrary or fanciful mark when applied to banking services.

Freedom Sav. & Loan Ass'n v. Way, 757 F.2d 1176, 1182 n.5 (11th Cir. 1985) (citations omitted).  Suggestive, arbitrary, and fanciful marks are "inherently distinctive and are entitled to protection."  Two Pesos, Inc., 505 U.S. at 768.

The Court stands by its prior determination that the "It's a 10" mark is suggestive. See DE 29 at 8.  The phrase "It's a 10" does not directly describe a hair-care product. Nevertheless, "It's a 10" may connote quality and beauty so that the customer may use his imagination to surmise the nature of the hair-care product to which the mark adheres.  The Court thus concludes that the "It's a 10" mark is suggestive as to hair-care products, and is entitled to protection.  See Freedom Sav. & Loan Ass'n, 757 F.2d at 1182–83.

Plaintiff's "Miracle Leave In Products" mark is weaker, tending towards classification as "descriptive."  The phrase "Leave In Products" directly describes characteristics of the product to which it adheres.  Moreover, common self-laudatory epithets such as "Miracle" added to a descriptive mark do little to improve upon the strength of the mark.  See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 222 (3d Cir. 2000) (discussing self-laudatory marks and collecting cases). Nevertheless, the Court may consider the context in which a trademark appears in assessing likelihood of confusion.  See Sun-Maid Raisin Growers of Cal. v. Sunaid Food Prods., Inc., 356 F.2d 467, 469 (5th Cir. 1966) (per curiam).  Given that the "Miracle Leave In Products" mark appears prominently and in tandem with the distinctive "It's a 10" mark on the packaging of the Miracle Product, the "Miracle Leave In Products" mark in context is also sufficiently distinctive to warrant protection.

The Court also finds that the second factor, the similarity of the marks, weighs in favor of a likelihood of confusion.  In assessing the similarity of marks, a court should look to the "overall impression created by the marks . . . includ[ing] . . . the appearance, sound and meaning of the marks, as well as the manner in which the marks are used." Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1507 (11th Cir. 1985).  Here, Defendant's "10 PL+US" and "Miracle Leave In Treatment" marks used on the Old Bottle are very similar to Plaintiff's marks.  Defendant's "10 PL+US" mark may connote high quality or aesthetic appeal, much like Plaintiff's "It's a 10" mark; both marks also prominently feature the numeral "10."  Defendant's "Miracle Leave In Treatment" mark conveys a meaning close to that of Plaintiff's "Miracle Leave In Products."  The parties' marks also share similar orientations on similarly colored, irregularly shaped bottles. The "10 PL+US" and "It's a 10" marks appear higher on the front of each product's bottle relative to the white, lower-case "Miracle Leave In Treatment" and "Miracle Leave In Products" marks.  Finally, each party's marks approximate the other's color schemes. The similarity of the parties' marks thus suggests a likelihood of confusion.

The third factor, the similarity of the products, also favors a likelihood of confusion.  The parties' products have functionally identical uses.  See DE 75 at 11; DE 79-5.  Furthermore, as stated throughout, Plaintiff's Miracle Product and Defendant's Old Bottle share numerous similarities in package design.  The parties' products are thus substantially similar.  See Frehlig Enters., Inc. v. Int'l Select Grp., Inc., 192 F.3d 1330, 1338 (11th Cir. 1999) (engaging in similarity of products analysis).

The parties disagree as to the fourth factor regarding the similarity of their sales channels and target customers.  Defendant argues that it sells to the "mass market" by

distributing its products through large retailers such as Target, while Plaintiff sells to a "premium" market by distributing its products only through beauty salons.  DE 72 at v, 7–8; DE 72-1 at 2.  Plaintiff counters with evidence that its products are available for sale by those same large retailers carrying Defendant's products, including Target.  DE 81 at 10; see also DE 77-2; DE 79-4.  Plaintiff has therefore created an issue of fact with regard to the similarity of the parties' sales channels and target customers.

With regard to the sixth factor, of intent, the Court has previously held that the striking similarity of the Miracle Product and the Old Bottle suggests that Defendant intentionally copied Plaintiff's design.  See DE 29 at 9.  For summary-judgment purposes, Plaintiff has produced further evidence of intent.  Specifically, an invoice from a design firm that worked on Defendant's product indicates that Defendant retained the firm for a project containing "It's a Ten" in the project title.  DE 79-15; see also DE 79-8 at 6.  This invoice is circumstantial evidence that Defendant had Plaintiff's marks in mind when it conceptualized the packaging for its product, and copied Plaintiff's marks with intent to capitalize on Plaintiff's goodwill in the marketplace.  The factor of intent therefore weighs in Plaintiff's favor.  See Frehlig Enters., Inc., 192 F.3d at 1340.

Taken together, the strength of Plaintiff's marks, the similarity of the parties' marks, products, and marketing channels, and Defendant's possibly intentional copying of Plaintiff's marks weigh in favor of a likelihood of confusion.  The evidence of likelihood of confusion before the Court therefore precludes summary judgment in Defendant's favor on this issue with respect to the Old Bottle.[3]

---

[3] The Court notes that the parties have produced insufficient evidence with regard to the similarity of their advertising media and the presence or absence of actual confusion for these factors to weigh appreciably in either party's favor.

## 2. __The New Bottle__

In its Opposition to Defendant's Motion, Plaintiff concentrates its arguments on the similarities between its Miracle Product and Defendant's Old Bottle, largely ignoring the New Bottle.  See generally DE 81 at 9–15.  Plaintiff's focus is understandable, as Defendant significantly altered its product's packaging in response to this lawsuit. See DE 10-5.  Defendant's New Bottle no longer exhibits many of the characteristics supporting a likelihood of confusion with the Miracle Product.  Defendant has altered the color scheme of its "10 PL+US" mark and its product's packaging to conform with its other product lines, has changed the orientation and placement of its "10 PL+US" mark, and has removed the word "Miracle" from its label.  See DE 10-6 at 4; DE 72 at ii; DE 72-1; DE 79-13.  The "10 PL+US" and "Leave In Treatment" marks on the New Bottle are no longer oriented in relation to one another in a way that evokes the overall impression of the "It's a 10" and "Miracle Leave In Products" marks on the Miracle Product.  In short, Defendant has modified its product so that the marks on the New Bottle appear sufficiently dissimilar from those on the Miracle Product that a likelihood of confusion among the marks and products no longer exists.

Moreover, Defendant's alterations to its product's packaging do not imply an intent to copy Plaintiff's marks, but instead an intent to *differentiate* its product from Plaintiff's.  Nor has Plaintiff come forward with any probative evidence of actual confusion between its Miracle Product and Defendant's New Bottle.  Taking together the distinctive appearance and use of each party's marks, the lack of evidence of actual confusion, Defendant's apparent intent to differentiate the New Bottle from the Miracle Product, and the remaining likelihood-of-confusion factors, the Court determines that no reasonable jury could find a likelihood of confusion with regard to Defendant's New

Bottle.  See Lone Star Steakhouse & Saloon, Inc., 122 F.3d at 1382.  The Court will grant summary judgment in Defendant's favor on Count I as it relates to the New Bottle.

**B.  Count II: Trade Dress Infringement (15 U.S.C. § 1125(a))**

Defendant argues that Plaintiff's trade-dress claim fails for the same reason that it believes Plaintiff's trademark claim to be deficient.  The Court agrees with Defendant insofar as the outcome is the same with regard to the trade-dress claim as to the trademark claim: The Court will deny Defendant's Motion as it pertains to the Old Bottle, and will grant the Motion with respect to the New Bottle.

A plaintiff asserting a trade-dress infringement claim must allege and prove that: "(1) the product design of the two products is confusingly similar; (2) the features of the product design are primarily non-functional; and (3) the product design is inherently distinctive or has acquired secondary meaning."  Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC, 369 F.3d 1197, 1202 (11th Cir. 2004).  Defendant contests only the first element, that the designs of its product and the Miracle Product are "confusingly similar."  DE 72 at 10–11.  The test for confusing similarity is the same seven-factor test used to determine the existence of a likelihood of confusion on a trademark infringement claim.  John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 981 (11th Cir. 1983).

For purposes of the Motion, the Court considers Plaintiff's trade dress to consist of an irregularly shaped violet container bearing a magenta cap or top.  The container displays the "It's a 10" mark on its front, with the violet "10" superimposed over a white circle and surrounded by a magenta ring, towards the top of the container.  Below Plaintiff's "It's a 10" mark is Plaintiff's "Miracle Leave In Products" mark.  The "Miracle Leave In Products" mark reads horizontally, and in white, lower-case, sans serif font.

Here, Plaintiff has provided substantial evidence regarding the first factor: the strength of its trade dress. Plaintiff's trade dress is not in itself inherently distinctive. Nevertheless, Plaintiff has expended substantial efforts and resources in developing its brand and trade dress, and cultivating consumer recognition of its trade dress. DE 78 ¶¶ 6–16; DE 78-1. Plaintiff's trade dress has attained recognition and a secondary meaning in the minds of consumers (see DE 78 ¶¶ 11–14;DE 78-2); the sincerest proof of this secondary meaning is Defendant's apparently intentional imitation of the Miracle Product when designing its Old Bottle. See Brooks Shoe Mfg. Co. v. Suave Shoe Corp., 716 F.2d 854, 860 (11th Cir. 1983). This evidence, taken together, illustrates that Plaintiff's trade dress is of considerable strength.

With regard to the remaining factors of confusing similarity, the Court's analysis mirrors its analysis of likelihood of confusion regarding the parties' trademarks. Plaintiff's Miracle Product and Defendant's Old Bottle are sold in similar, violet-colored containers, with similarly placed marks of similar appearances. Defendant's Old Bottle even bears its own "Sosilk" mark rendered in a manner that mimics the "10" element of the "It's a 10" mark on the Miracle Product, with the violet "Sosilk" superimposed over a white circle and surrounded by a magenta ring, towards the top of the container. The similarity of the products' appearances therefore weighs in favor of potential confusion. See Frehlig Enters., Inc., 192 F.3d at 1338. The products are also marketed for identical purposes through possibly similar channels of trade. Finally, the striking similarity of the products' appearances, coupled with an invoice from a designer suggesting that Defendant sought to mimic Plaintiff's packaging, put the factor of intent squarely in Plaintiff's favor. In short, Plaintiff has produced sufficient evidence of

confusing similarity to avoid summary judgment on its trade-dress claim with regard to the Old Bottle.

On the other hand, Plaintiff has failed to rebut Defendant's arguments with regard to the New Bottle.  Plaintiff's description of the infringing elements of Defendant's packaging relates only to the Old Bottle.  <u>See</u> DE 81 at 13–14.  Plaintiff's task of establishing confusing similarity would be much more arduous with respect to the New Bottle, as Defendant has modified the New Bottle to distinguish it visually from Plaintiff's product.  <u>See</u> <u>supra</u>, pp. 12–13.  Given the distinctive and different appearances of the Miracle Product and the New Bottle, and Defendant's apparent intent to differentiate the New Bottle from the Miracle Product, no reasonable factfinder could conclude that Defendant's New Bottle is confusingly similar to Plaintiff's Miracle Product.  <u>See</u> <u>Lone Star Steakhouse & Saloon, Inc.</u>, 122 F.3d at 1382.  The Court therefore will grant summary judgment in Defendant's favor on the trade-dress claim as it pertains to the New Bottle.

**C.** **<u>Count III: Trademark Dilution (15 U.S.C. § 1125(c))</u>**

A plaintiff claiming dilution must prove, among other things, that its mark is famous.  <u>Rain Bird Corp. v. Taylor</u>, 665 F. Supp. 2d 1258, 1266–67 (N.D. Fla. 2009).  Defendant argues that Plaintiff's dilution claim should be dismissed because Plaintiff's marks are not famous.  DE 72 at 12–13.  The Court agrees with Defendant, and will grant summary judgment for Defendant on the dilution claim.

A court may consider numerous factors in determining whether a mark is famous, including:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark.

(iv) Whether the mark was registered . . . .

15 U.S.C. § 1125(c)(2)(A).  The threshold for a showing of fame, however, is exceptionally high.  "It is well-established that dilution fame is difficult to prove."  Coach Servs., Inc. v. Triumph Learning LLC, 668 F.3d 1356,1373–76 (Fed. Cir. 2012) ("COACH" brand of luxury bags insufficiently famous to support dilution). Only marks "widely recognized by the general consuming public of the United States" can qualify for dilution protection.  15 U.S.C. § 1125(c)(2)(A).  Even a showing that a mark is well-known in its particular market is insufficient, and instead the mark must "engender immediate recognition in the general public."  Michael Caruso & Co. v. Estefan Enters., Inc., 994 F. Supp. 1454, 1463 (S.D. Fla. 1998); see also Top Tobacco, L.P. v. N. Atl. Operating Co., 509 F.3d 380, 384 (7th Cir. 2007) (noting that 2006 amendments to 15 U.S.C. § 1125(c) eliminated possibility of dilution premised on "niche" fame).  In other words, party claiming dilution must establish that its mark is practically a household name, of the likes of such giants of branding as Exxon, Kodak, and Coca-Cola.  Golden Bear Int'l, Inc. v. Bear U.S.A., Inc., 969 F. Supp. 742, 749 (N.D. Ga. 1996); see also 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:107 (4th ed. 2013).

Here, Plaintiff asserts that it has spent millions on advertising over the past few years, that its product is one of the "nation's top-selling leave-in conditioners," that it has received numerous industry awards, and that its sales top $50 million per year.  DE 81 at 17.  These facts illustrate Plaintiff's laudable recent successes within the beauty and

hair-care industries.  They do not begin to establish, however, that Plaintiff's marks have accumulated the cultural heft to transform them from mere trademarks—even strong ones—to a household name that is instantly recognizable among the general public of the United States.  The Court therefore will grant Defendant's motion for summary judgment with respect to the dilution claim.  See Provide Commerce, Inc. v. Preferred Commerce, Inc., No. 07-80185, 2008 U.S. Dist. LEXIS 27697, at *13 (S.D. Fla. Apr. 4, 2008) (granting summary judgment on dilution claim where Plaintiff's evidence of advertising and commercial success was insufficient to create issue of fact as to fame).

**D.  Count IV: False Designation of Origin and False Advertising (15 U.S.C. § 1125(a))**

Plaintiff's section 1125(a) claim alleges "passing-off," which "occurs when a producer misrepresents his own goods or services as someone else's."  Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 n.1 (2003); see DE 1 ¶¶ 49–51.  A plaintiff claiming passing-off must show "(1) that the plaintiff had enforceable trademark rights in the mark . . . and (2) that the defendant made unauthorized use of it 'such that consumers were likely to confuse the two.'"  Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647–48 (11th Cir. 2007).  The test of consumer confusion for passing-off is identical to that used in assessing likelihood of confusion with respect to a claim for trademark infringement.  Ross Bicycles, Inc., 765 F.2d at 1503–04.

Defendant argues that Plaintiff has failed to establish likelihood of confusion to support its passing-off claim.  As discussed supra, pp. 8–11, Plaintiff has produced sufficient evidence of likelihood of confusion to create an issue of material fact with regard to the Old Bottle.  Conversely, Plaintiff has failed to make such a showing with

regard to the New Bottle.  The Court therefore will grant summary judgment for Defendant on Count IV only insofar as it pertains to the New Bottle.

Defendant also suggests that Plaintiff's claim fails for lack of actual damages. See DE 72 at 14.  Section 1125(a), however, contains no requirement of actual damages, and indeed 15 U.S.C. § 1117(a) provides that damages beyond those actually suffered are available on such claims.  Web Printing Controls Co. v. Oxy-Dry Corp., 906 F.2d 1202, 1204–05 (7th Cir. 1990).  Moreover, Defendant cites no binding authority for its contention that actual damages are required to state a passing-off claim under section 1125(a).  Defendant cites only one district court decision stating that such a showing is necessary.  See DE 72 at 14 (citing Pegasus Imaging Corp. v. Northrop Grumman Corp., No. 07-1937, 2010 U.S. Dist. LEXIS 118586 (M.D. Fla. Nov. 5, 2010)).

The Court in Pegasus Imaging, however, imposed this requirement in reliance upon two cases dealing with another specific and unique subset of section 1125(a) claim, "reverse passing-off."  2010 U.S. Dist. LEXIS 118586, at *15 (citing Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc., 457 F.3d 1269, 1277 (Fed. Cir. 2006), and N. Am. Clearing, Inc. v. Brokerage Comp. Sys., Inc., 666 F. Supp. 2d 1299, 1309 (M.D. Fla. 2009)).  Although the language of section 1125(a) does not require a showing of actual harm, some courts have appended such an element to reverse passing-off claims.  Atlas Equip. Co. v. Weir Slurry Grp., Inc., No. 07-1358, 2009 U.S. Dist. LEXIS 120128, at *19 (W.D. Wash. Sept. 15, 2009), aff'd, 2011 U.S. App. LEXIS 342 (9th Cir. Jan. 6, 2011); Kurtis A. Kemper, Application of Doctrine of "Reverse Passing Off" Under Lanham Act, 194 A.L.R. Fed. 175 § 3 (2004).  Reverse passing-off is not at issue in this case, however, and the Court declines to follow the lead of the Pegasus Imaging court

in extending an actual-damages element to section 1125(a) claims beyond those for reverse passing-off.  In sum, an absence of evidence establishing actual damages would not require summary judgment for Defendant on Count IV.

### E. <u>Count V: Florida Common-Law Trademark Infringement</u>

Defendant argues that Plaintiff cannot establish a likelihood of confusion to support its state-law claim for trademark infringement.  The parties agree that the standard for determining likelihood of confusion under Florida law is the same as under federal law.  DE 72 at 14–15; DE 81 at 15; <u>see also</u> <u>HBP, Inc. v. Am. Marine Holdings, Inc.</u>, 290 F. Supp. 2d 1320, 1339 (M.D. Fla. 2003), <u>aff'd</u>, 129 F. App'x 601 (11th Cir. 2005).  Therefore, for the reasons discussed <u>supra</u>, pp. 12–13, the Court will grant summary judgment for Defendant on the state-law infringement claim with regard to the New Bottle because of an absence of likelihood of confusion.

Defendant also argues that, because it did not "use" the Old Bottle in Florida, Florida's trademark law does not apply to its conduct.  DE 72 at 15.  Plaintiff counters that Defendant's shipments of samples to a handful of distributors in Florida was sufficient to constitute use.  DE 81 at 15.  "Use" under Florida law as relevant here requires that a mark be placed on goods sold or transported in Florida in the ordinary course of trade.  Fla. Stat. § 495.011(14)(a); <u>see also</u> <u>Tally-Ho, Inc. v. Coast Cmnty. College Dist.</u>, 889 F.2d 1018, 1025–26 (11th Cir. 1989) (per curiam) (holding elements of Florida common-law and statutory infringement the same).  Courts construing similar provisions of federal trademark statutes have held that the sending of samples to potential clients is sufficient to establish use of a mark.  <u>See</u> <u>Medimport, S.R.L. v. Cabreja</u>, No. 12-22255, 2012 U.S. Dist. LEXIS 121667, at *27 (S.D. Fla. July 31, 2012), <u>adopted by</u> 2012 U.S. Dist. LEXIS 186261 (S.D. Fla. Sept. 25, 2012); <u>accord</u>

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 19:118 (4th ed. 2013).  Viewing the facts in the light most favorable to Plaintiff, Defendant's shipments of the Old Bottle to potential distributors in Florida, albeit in limited quantities (see DE 72-1 at 2; DE 79-9), are sufficient to constitute "use" of the Old Bottle in Florida.  The Court therefore rejects Defendant's argument that its non-use of the Old Bottle requires summary judgment on Plaintiff's state-law infringement claim.

###    F.   Count VI: FDUTPA

Defendant argues that Plaintiff's FDUTPA claim must also be dismissed because Plaintiff cannot show that Defendant used the marks at issue in Florida.  DE 72 at 15–16.  A plaintiff asserting a trademark claim under FDUTPA must prove that (1) the plaintiff's mark has priority, (2) the defendant used the mark in commerce, and (3) the use of the mark is likely to cause confusion.  Bureau of Dangerous Goods, Ltd. v. Hazmat Software, LLC, No. 11-774, 2012 U.S. Dist. LEXIS 52845, at *28 (M.D. Fla. Mar. 30, 2012).  A FDUTPA claim premised on trademark infringement "rises or falls on the success of its trademark infringement . . . claim[]."  Suntree Techs., Inc. v. Ecosense, Int'l, Inc., 802 F. Supp. 2d 1273, 1279 (M.D. Fla. 2011) (quoting Natural Answers, Inc. v. SmithKline Beecham Corp., 529 F.3d 1325, 1333 (11th Cir. 2008)), aff'd, 693 F.3d 1338 (11th Cir. 2012).  As discussed with respect to the state-law trademark claim, Defendant's sending of samples to potential distributors in Florida, viewed in a light most favorable to Plaintiff, is sufficient to preclude summary judgment regarding Defendant's use of the marks at issue in Florida.  The Court therefore will

grant summary judgment on the FDUTPA claim only with regard to the New Bottle, as a result of Plaintiff's inability to establish likelihood of confusion.[4]

### G. Count VII: Trademark Counterfeiting (15 U.S.C. § 1114)

Federal law prohibits counterfeiting of a registered mark.  15 U.S.C. § 1114.  The aim of a counterfeiter is typically to create a duplicate of a renowned product, and to market the duplicate to a confused public as the genuine article.  Fila U.S.A., Inc. v. Kim, 884 F. Supp. 491, 494 (S.D. Fla. 1995).  A "counterfeit" mark as applicable here is accordingly a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  The test for whether marks are "substantially indistinguishable" is ill-defined by the applicable caselaw.  See 4 J. Thomas McCarthy on Trademarks and Unfair Competition § 25:10 n.31 (4th ed. 2013).  Nevertheless, the test for whether marks are substantially indistinguishable is more rigorous than the test for likelihood of confusion.  Id.; GMA Accessories, Inc. v. BOP, LLC, 765 F. Supp. 2d 457, 471–72 (S.D.N.Y. 2011).

A simple examination of the parties' marks establishes that no reasonable trier of fact could find them "substantially indistinguishable."  Plaintiffs' marks at issue here are the "It's a 10" and "Miracle Leave In Products" marks.  Defendant's marks are the "10 PL+US" and "Miracle Leave In Treatment" marks.  The "10 PL+US" mark as used on the Old Bottle, while potentially confusingly similar to the "It's a 10" mark, is certainly not substantially indistinguishable from the "It's a 10" mark.  The two marks contain different words, and their text appears in different colors and different fonts.  See GMA

---

[4] Defendant also argues that Plaintiff cannot obtain injunctive relief on its FDUTPA claim because Defendant has ceased all infringement.  See DE 72 at 17. However, as discussed infra, p. 23, Defendant has not met its burden of establishing that injunctive relief is unavailable herein.

Accessories, Inc., 765 F. Supp. 2d at 471–72 (granting summary judgment on counterfeiting claim where marks contained different words).  "Miracle Leave In Treatment" and "Miracle Leave In Products" are likewise neither identical nor substantially indistinguishable, because the marks appear in different fonts and contain different words.  See id.  Moreover, the Court rejects Plaintiff's argument that these significant differences in the defining attributes of the marks should be disregarded as "trivial."  See DE 81 at 18–19; Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp., Inc., 486 F. Supp. 2d 286, 290–91 (S.D.N.Y. 2007) (differences in spelling and font variations of marks not "trivial").  In short, even where Plaintiff's and Defendant's products may be confusingly similar, no reasonable factfinder could determine that their marks are identical or substantially indistinguishable.  The Court will grant summary judgment for Defendant with respect to the counterfeiting claim.

## H. Count VIII: Unjust Enrichment

The parties are in apparent agreement that a plaintiff can recover a defendant's profits on a claim of unjust enrichment arising from trademark infringement.  DE 72 at 18–19; DE 81 at 20.  With respect to this claim, Defendant argues only that Plaintiff has adduced no competent evidence of Defendant's profits.  DE 72 at 18–19.  Defendant contends that Plaintiff's proffered evidence, derived from an expert report provided by Defendant in this action, is inadmissible.  See DE 85 at 2–3 (Defendant's motion to strike).  The Court need not address the admissibility of the expert report, however, because Defendant itself has provided evidence of profits.  Specifically, Defendant has affirmatively stated that it made sales of the Old Bottle.  DE 72-1 at 2.  As a for-profit company, Defendant presumably sells its goods with the aim of earning a profit.  Therefore, Defendant's admission that it sold the Old Bottle is sufficient to create

a factual issue with regard to the existence of recoverable profits.  Cf. Habersham Plantation Corp. v. Art & Frame Direct, Inc., No. 10-61532, 2011 U.S. Dist. LEXIS 103525, at *7–8 (S.D. Fla. Sept. 13, 2011) (denying motion to limit damages where defendant contended that expert report contained insufficient evidence of profits but record contained evidence of sales).  The Court will deny Defendant's Motion with regard to the unjust enrichment claim.

### I.   Injunctive Relief

Defendant also argues that the injunctive relief Plaintiff seeks herein is moot, because it stopped manufacturing and selling the Old Bottle promptly after the initiation of this lawsuit, and by extension has ceased the infringement of which Plaintiff complains.  DE 72 at 19–20; DE 72-1 at 1.  Plaintiff, however, contends that Defendant has continued to sell its product in the Old Bottle during the pendency of this litigation. DE 81 at 5.  Plaintiff points to records produced by Defendant that show sales of products referred to as "Miracle Leave In Treatm[ent]" subsequent to the time at which Defendant contends it stopped selling the Old Bottle.  DE 79-9.  The "Miracle Leave In Treatment" mark, of course, appeared only on Defendant's Old Bottle.  See DE 72-1 at 1.  Defendant therefore has not met its burden of establishing with absolute clarity that all infringement has ceased such that Plaintiff's request for a permanent injunction would be moot.  See Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1184 (11th Cir. 2007).

### J.   Motion to Strike

Finally, Defendant has filed a motion to strike certain portions of the evidence offered by Plaintiff in response to the Motion: (1) the Declaration of Jeff Cohen [DE 76];

(2) the Declaration of Michael J. Sacks, Esq. [DE 79]; and the Preliminary Expert Report of Walter Bratic [DE 79-3]. <u>See</u> DE 85.

The Court has not relied on Mr. Cohen's statements of his personal beliefs regarding consumers' likely reactions to the presence of Defendant's products on the market, as such statements are of negligible probative value with regard to the issues in this case. <u>See</u> DE 76 ¶¶ 9–10. Moreover, the Preliminary Expert Report of Walter Bratic does not impact the Court's determination of the issues herein, including those issues for which it is cited: the availability of Defendant's profits as a remedy on Plaintiff's unjust enrichment claim and Defendant's allegedly continuing sales of the Old Bottle. <u>See</u> DE 81 at 2, 5, 20. The Court therefore will deny Defendant's motion to strike the Cohen declaration and the Bratic report as moot.

Defendant also moves to strike the declaration of Plaintiff's counsel, Michael J. Sacks, Esq., which submits documents produced in discovery and other materials as exhibits in opposition to Defendant's motion for summary judgment. However, it is common practice for attorneys to submit documents produced in discovery, and other matters within their knowledge, in the form of a declaration with exhibits at the summary judgment stage. <u>See, e.g.</u>, <u>Davis v. Peake</u>, No. 08-3570, 2011 U.S. Dist. LEXIS 107380, at *8–10 (S.D.N.Y. Sept. 20, 2011), <u>aff'd</u>, 505 F. App'x 67 (2d Cir. 2012). Moreover, those exhibits to which Defendant objects and upon which the Court relies in making its determinations—Exhibits 1, 4, and 5 to the Sacks declaration—could each be provided in admissible form at trial. Exhibit 1, pages 4–5 (cited <u>supra</u>, p. 1), is a pair of federal trademark registrations, susceptible to judicial notice. <u>See</u> <u>Chanel, Inc. v. Dudum</u>, No. 12-01966, 2012 U.S. Dist. LEXIS 163627, at *2 n.2 (N.D. Cal. Oct. 29,

2012), adopted by 2012 U.S. Dist. LEXIS 163656 (N.D. Cal. Nov. 15, 2012).  Moreover, Mr. Sacks submits Exhibits 4 and 5 (cited supra, pp. 3, 10–11) on the basis of his own personal knowledge.  See DE 79 ¶¶ 5–6; DE 88 ¶¶ 4–5.  The Court therefore denies Defendant's motion to strike the declaration of Mr. Sacks.  To the extent material appended to the declaration contains inadmissible hearsay, the Court has disregarded that material in arriving at its conclusions.  The Court also notes that its denial of Defendant's motion to strike is without prejudice to any objections to the admissibility of evidence at trial.

## IV.  CONCLUSION

In accordance with the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

(1) Defendant's Motion for Summary Judgment [DE 72] is **GRANTED in part** and **DENIED in part**;

(2) Defendant's Motion for Summary Judgment is **GRANTED** with regard to Counts III and VII;

(3) Defendant's Motion for Summary Judgment is **GRANTED** with regard to Counts I, II, and IV–VI only insofar as those Counts pertain to the New Bottle;

(4) Defendant's Motion for Summary Judgment is **DENIED** in all other respects; and

(5) Defendant's Motion to Strike [DE 85] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 23rd day of December, 2013.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF